UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 94-20685

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                    versus

URSULA BERNADETTE BROUSSARD; RAPHAEL A CASTRO,
aka Jhony Castillo Rivera, aka Johny Castillo
Rivera In Custody; RUTH CASTRO; ROMEL WILLIAM
TORRES; CLAUDE MERRITT,

                              Defendants-Appellants.

_____

Appeal from the United States District Court for the
Southern District of Texas
_____

April 4, 1996

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

     Ursula Broussard ("Broussard"), Ruth Castro, Raphael Castro,

Claude Merritt ("Merritt"), and Romel Torres ("Torres") appeal from

their convictions on various charges stemming from their

participation in a drug-trafficking organization.  Merritt also

appeals from the sentence imposed for his drug conviction.  We

affirm.


                         BACKGROUND

     The convictions arise out of the Drug Enforcement Agency's

("DEA") investigation of a drug-trafficking organization operating out of Houston, Texas. The DEA believed that Torres was the organization's kingpin. Torres's drug-trafficking associates included Ruth Castro, his common-law wife, Raphael Castro, her brother, Merritt, Broussard, Pearl Hughes, Harold Garcia, and Henry Carvoijol.[1] The organization was transporting large quantities of cocaine to New York and Chicago in several cars equipped with hidden compartments. An associate of Torres would transport the cocaine and would then return to Houston with money stashed in the hidden compartment.

After placing several members of the organization under surveillance and searching some members' homes, the defendants were indicted on various counts. A jury convicted Broussard, Ruth Castro, Raphael Castro, and Merritt of conspiring to possess cocaine with intent to distribute; Raphael Castro, Merritt, and Torres of possessing cocaine with the intent to distribute; and Torres of engaging in a continuing criminal enterprise, using a communications facility in the course of a controlled substance offense, conspiracy to launder money, eight counts of money laundering, and eight counts of evading a currency reporting requirement.

In this appeal, the various appellants attack the sufficiency of the evidence, various orders on motions to suppress, denials of requests for severance, and a sentence enhancement based on the

---

[1] Hughes and Carvoijol pled guilty before trial, and Garcia forfeited his bond and became a fugitive on the day of trial. The jury acquitted five other co-indictees on all counts.

2

possession of firearms.

DISCUSSION

## I.  Sufficiency of the Evidence

Broussard and Ruth Castro contend that the evidence was insufficient to support their convictions for conspiracy to possess cocaine with the intent to distribute.  In reviewing sufficiency, this Court views the evidence and all inferences to be drawn from it in the light most favorable to the jury verdict to determine whether a reasonable jury could find that the evidence establishes guilt beyond a reasonable doubt.  United States v. Sanchez-Sotelo, 8 F.3d 202, 208 (5th Cir. 1993), cert. denied, _ U.S._, 114 S. Ct. 1410, 128 L. Ed.2d 82 (1994).  "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence."  United States v. Bermea, 30 F.3d 1539, 1551 (5th Cir. 1994), cert. denied, __ U.S. _, 115 S. Ct. 1113, 130 L. Ed.2d 1077 (1995).

To establish a drug conspiracy under 21 U.S.C. § 846, the government must prove:  (1) the existence of an agreement between two or more persons to violate federal narcotics laws; (2) that the defendant knew of the agreement; and (3) that the defendant voluntarily participated in the agreement.  United States v. Gallo, 927 F.2d 815, 820 (5th Cir. 1991).  The elements may be proved by circumstantial evidence and "[c]ircumstances altogether inconclusive, if separately considered, may, by their number and

3

joint operation . . . be sufficient to constitute conclusive proof." United States v. Roberts, 913 F.2d 211, 218 (5th Cir. 1990), cert. denied, 500 U.S. 955, 111 S. Ct. 2264, 114 L. Ed.2d 716 (1991) (quoting United States v. Lechuga, 888 F.2d 1472, 1476 (5th Cir. 1989)).

A. *Broussard*

Broussard contends that the evidence is insufficient to prove her knowledge of and voluntary participation in the drug ring. She argues that the Government's entire case was based on the fact that she is the sister of Pearl Hughes, a co-indictee who entered a plea pretrial, and lived with several alleged members of the drug ring. Broussard correctly asserts that a conviction cannot be based solely on the existence of familial relationships or upon the defendant's mere knowing presence. See United States v. Williams-Hendricks, 805 F.2d 496, 503 (5th Cir. 1986). Inferences drawn from familial relationships or mere knowing presence, however, may be combined with other circumstantial evidence to support a conspiracy conviction. Id.

The Government relies on several pieces of evidence to support Broussard's conviction. The Government argues that Broussard's various conversations with Torres indicate her voluntary participation because she knew to contact Torres when a problem arose and she understood the need to be discreet when contacting him. The record reveals that Hughes was arrested in Louisiana while on a drug-transporting trip. Shortly thereafter Broussard contacted Torres and stated, "I think we got a problem." On July

4

12, 1993, Broussard called Torres from a friend's home to tell him that Hughes's bail had been set at $500,000. When Torres discovered where Broussard was calling from, he became concerned that she had not used a pay phone. Broussard assured him that the phone was "safe," but Torres remained unconvinced, informing Broussard, "Listen, if people around anything, you know if people just around, while we talk that's not the waySQyou can always find a payphone."

Evidence was also presented that on at least one occasion Broussard reserved hotel rooms for Hughes to stay in on a drug run. Broussard admitted during questioning by DEA agents that she participated in two trips and that she had received a share of the fee plus expenses for each trip. Although Broussard contends that Hughes testified that Broussard was unaware that the vehicles contained secret compartments to carry drugs, the Government asserts that the jury could infer that Broussard knew at the time she willingly participated in the trips that their purpose was to transport illicit drugs.[2] Broussard also knew that Torres paid Hughes to transport $60,000 from Houston to Miami.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the conviction should be upheld. See Sanchez-Sotelo, 8 F.3d at 208. A reasonable jury could infer from

---

[2] Hughes testified during trial that although no one explicitly informed her that she was transporting drugs, she believed that the cars she drove were carrying money or drugs. The Government asserts that the jury could reasonably infer that Broussard similarly understood that drug trafficking was involved because she was also paid and had witnessed the same routine. In connection with this, we note that Broussard had a prior conviction for possession of a large amount of marijuana.

5

the evidence that Broussard knew of and voluntarily participated in the drug-trafficking conspiracy.

*B.  Ruth Castro*

Castro argues that the evidence is insufficient to support her conviction for drug conspiracy.[3]  The Government principally relied on two recorded phone conversations in prosecuting Castro.  On July 8, 1993, two days before Hughes was arrested in a gold Lincoln Continental carrying fifty-four bags of cocaine in Louisiana, Castro paged her brother, Raphael Castro, and put in a call-back code of "54."  She then called her sister, Luce, and informed her using code words that she had placed a number in Raphael Castro's beeper.  Ruth Castro then stated, "Mark him, so he can come and take the yellow . . . car,"[4] and also requested that Luce tell Raphael that Ruth needed a favor from him.

Soon after Hughes was arrested on July 10, 1993, Torres and Ruth Castro engaged in a coded conversation:

> Torres:  I got a call, my aunt like . . . I don't know yet what's happening.
> . . .
> Castro:  Is she ill?
> Torres:  It's not known exactly yet, what it is. . . .

---

[3]     She also contends that the evidence is insufficient to support a conviction for aiding and abetting.  The jury obviously agreed, as it acquitted Castro on this charge.  Thus, we need not address Castro's contention.

[4]     The Government asserts that the "yellow car" meant the gold Lincoln based on Raphael Castro's conversation with Torres a few hours later:  "Lucy said that Ruth called of [sic] the Lincoln." Castro then informed Torres that he had "armed" the Lincoln.  The jury could conclude that the "yellow car" referred to was the Lincoln.

Bob Boudreau, a DEA agent, testified that based upon his experience and his involvement in the investigation, Torres's reference to an "aunt" informed Castro that one of Torres's associates was in trouble, and Castro's response inquiring whether the aunt was ill was intended to specifically question whether Hughes had been arrested.

Castro argues that these conversations do not prove that she either knew of or voluntarily participated in the conspiracy. She asserts that the Government presented no evidence that she was alone during her conversation with Luce concerning the "yellow car." Thus, she claims the Government could not discount the strong probability that she was merely passing along messages without being aware of their content. In United States v. Ortiz, 942 F.2d 903 (5th Cir. 1991), cert. denied, 504 U.S. 985, 112 S. Ct. 2966, 119 L. Ed.2d 587 (1992), the defendant similarly argued that she relayed messages without understanding their content. This Court rejected her argument, noting that her explanations "blithely overlook the fact that we are bound at this juncture to `resolve all inferences and credibility assessments in favor of the jury verdict.'" Id. at 908 (quoting United States v. Singh, 922 F.2d 1169, 1173 (5th Cir.), cert. denied, 500 U.S. 938, 111 S. Ct. 2066, 114 L. Ed.2d 471 (1991)). Castro's arguments reflect the same misapprehension of our role in reviewing the evidence. Castro apparently made this self-serving argument to the jury; the jury rejected it.

In addition to the phone conversations, Castro associated with various members of the conspiracy, was a frequent passenger in many

7

of the cars used for drug transport, often was present at sites, such as hotels, important to the conspiracy, and was present in the car on a couple of occasions when Torres engaged in "heat runs"SQerratic driving commonly used to determine whether a vehicle is under police surveillance. The Government's search of Torres's and Castro's home revealed no evidence that either was employed or had a legitimate source of income, yet approximately $10,000 was recovered from their home.

From these circumstances, the jury could infer Castro's guilt. See United States v. Steen, 55 F.3d 1022, 1032 (5th Cir.), cert. denied, __ U.S. __, 116 S. Ct. 577, 133 L. Ed.2d 500 (1995) (concluding that knowledge can be inferred from suspicious circumstances that indicate the defendant's consciousness of guilt). Despite Castro's assertion that the jury convicted her based on her marital relationship with Torres, the evidence provided an adequate basis for the jury to infer Castro's knowledge of and voluntary participation in the conspiracy. See United States v. Ornelas-Rodriquez, 12 F.3d 1339, 1345 (5th Cir.), cert. denied, _ U.S. _, 115 S. Ct. 103, 130 L. Ed.2d 51 (1994).

The evidence was sufficient to support both Broussard's and Castro's convictions for conspiracy to possess cocaine with the intent to distribute.

## II. District Court's Refusal to Suppress Evidence

Raphael Castro and Claude Merritt attack the district court's admission of evidence seized and incriminating statements made during the searches of their residences. In reviewing a district

court's ruling on a motion to suppress, we must accept its factual findings unless they are clearly erroneous or are influenced by an incorrect view of the law. United States v. Breeland, 53 F.3d 100, 102 (5th Cir. 1995).

*A.  Raphael Castro*

During the execution of a search warrant on July 17, 1993, officers confronted Raphael Castro.  Officer Richard Mireles advised Castro of his legal rights in both English and Spanish and then permitted Castro to read the Spanish *Miranda* warning card himself.  Castro indicated that he understood his rights, but made no statements at that time.  Castro was then detained while officers performed a search of the residence.

Approximately ten to fifteen minutes after his initial detention, other officers on the scene informed Mireles that Castro wanted to speak with him.  Castro told Mireles that he wanted to cooperate with the DEA and give it "the big deal."  Mireles then advised the case agent, Mike McDaniel, of Castro's desire to cooperate.  McDaniel testified at the suppression hearing that Castro was informed that he would go to jail, but that the U.S. Attorney's office would be advised of his cooperation.  Castro then made several incriminating statements to officers concerning his involvement in the drug ring.

Castro initially argues that his detention violated the Fourth Amendment because it was prolonged and overly intrusive.  See Michigan v. Summers, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed.2d 340 (1981).  Although Castro concedes that the search warrant was

9

valid, he argues that the manner in which it was carried out was unreasonable and, thus, violative of the Fourth Amendment. Franklin v. Foxworth, 31 F.3d 873, 875 (9th Cir. 1994). Castro argues that he was held for fifteen minutes without being taken before a magistrate, he did not speak English, he was taken to the area searched and questioned during the search, and he was promised leniency. He argues that these factors indicate overly intrusive police conduct in the absence of any law enforcement interests in detention.

We reject Castro's contention. Castro concedes that the officers could detain him and we find no merit in his argument that the officers' actions constituted prolonged or overly intrusive police conduct. Castro was detained only ten to fifteen minutes before he agreed to cooperate, the evidence provides no indication that the search was not conducted diligently, and Castro was not handcuffed or threatened during this period. Although Castro attempts to make much of the fact that he did not speak English, there was at least one officer on the premises who spoke Spanish and communicated with Castro. As discussed in more detail below, Castro was not promised leniency in exchange for his cooperation. Moreover, we perceive nothing improper in the fact that Castro was taken to the driveway while officers searched the house and the garage. The officers did not act unreasonably and certainly there is no support for Castro's claim of overly intrusive police conduct. Castro's Fourth Amendment challenge fails.

Castro next contends that the district court erred in admitting his incriminating statements to officers during the

search because they were obtained in violation of his Fifth Amendment rights. A confession is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice. United States v. Scurlock, 52 F.3d 531, 536 (5th Cir. 1995). A confession cannot be the product of official overreaching in the form of either direct or subtle psychological persuasion. Id.

The totality of the circumstances surrounding Castro's detention indicates that his statements were voluntary. He was immediately informed of his *Miranda* rights in Spanish, asked after each warning whether he understood, and given an opportunity to read a Spanish *Miranda* warning card.[5] Only fifteen minutes elapsed between the *Miranda* warnings and Castro's offer to cooperate. Castro also asserts that he was promised leniency in exchange for cooperation. Officers informed Castro that the U.S. Attorney would be apprised of his cooperation, but he was unequivocally informed that even if he cooperated, he would still go to prison. The officers' statements did not constitute a promise of leniency. See United States v. Ballard, 586 F.2d 1060, 1063 (5th Cir. 1978) (concluding that a statement that the accused's cooperation will be made known to the court is an insufficient inducement to render

---

[5] Castro also alleges that the officers interrogated him after he refused to speak with them and that an unidentified translator advised him of his *Miranda* rights and translated his incriminating statements. Neither allegation is supported by the record. Officer Mireles testified that he read Castro his rights and subsequently was told by other officers that Castro wanted to speak with him. The Government also points to the fact that Castro could not have been interrogated by other officers because all evidence indicates that the other officers with Castro did not speak Spanish.

11

subsequent confession involuntary); Ornelas-Rodriquez, 12 F.3d at 1348 (advising accused that there are advantages to cooperating does not render confession involuntary).  Castro's incriminating statements were voluntary, and we conclude that his Fifth Amendment rights were not violated.

*B.  Merritt*

Merritt challenges the district court's denial of a motion to suppress evidence seized during a search of his home and the admission of his confession.  Merritt concedes that the affidavit arguably established probable cause to believe that he was engaged in drug trafficking, but asserts that the affidavit failed to establish probable cause to support the magistrate's determination that evidence of drug-trafficking would be found in his home.

If an officer's reliance on a search warrant is objectively reasonable, evidence obtained under such warrant is admissible, even if the warrant itself is not based on adequate probable cause. United States v. Royal, 972 F.2d 643, 646 (5th Cir. 1992), cert. denied, 507 U.S. 911, 113 S. Ct. 1258, 122 L. Ed.2d 655 (1993); see United States v. Restrepo, 994 F.2d 173, 187 (5th Cir. 1993).  In order to avoid application of the good-faith exception to the exclusionary rule, Merritt argues that the magistrate wholly abandoned its judicial role and the warrant was so lacking in indicia of probable cause as to render official belief in its existence unreasonable. See United States v. Leon, 468 U.S. 897, 923, 104 S. Ct. 3405, 3421, 82 L. Ed.2d 677 (1984) (outlining various situations where the good-faith exception does not apply).

12

The affidavit must establish a nexus between the house to be searched and the evidence sought. See United States v. Freeman, 685 F.2d 942, 949 (5th Cir. 1982). That nexus may be established, however, by direct observation or through normal inferences as to where the articles sought would be located. See id.; United States v. Pace, 955 F.2d 270, 277 (5th Cir. 1992). Despite Merritt's argument that the affidavit fails to establish any connection between his residence and the drug-trafficking activity, the affidavit contains sufficient facts to conclude that the DEA agents' reliance was reasonable.

The so-called "boilerplate" assertions that Merritt complains of, which are based on the affiant's extensive experience and training and involve generalizations about the types of evidence that may be found in drug dealers' residences, do not undermine the reasonableness of reliance on the warrant. See Restrepo, 994 F.2d at 188; United States v. Kleinebreil, 966 F.2d 945, 949 (5th Cir. 1992). We do not mean to suggest that these types of generalizations, without more, are sufficient to render the officers' reliance objectively reasonable.

In the instant cause, however, the affiant presented specific facts linking Merritt and the residence to drug-trafficking activities. On July 8, 1993, Ruth Castro instructed someone to place cocaine in the gold Lincoln Continental. Later that day, Merritt and Torres picked up the Lincoln, and Merritt parked it in his driveway. Merritt and Torres then discussed delivery of the Lincoln, and Merritt was observed delivering the car to Hughes, who was arrested in Louisiana after cocaine was found in the car. The

13

affidavit also describes Merritt's involvement in two different apparent drug transactions. Merritt was also observed picking up a bag at a storage unit where police believed drugs were stored, the FILL-ER UP, and placing it in his car. He then drove to his residence and took the bag inside.

Based on this evidence, we conclude that the affidavit contained more than "bare bones" assertions and, thus, the officers' reliance on the warrant was reasonable. Restrepo, 994 F.2d at 189; United States v. Pigrum, 922 F.2d 249, 252 (5th Cir.), cert. denied, 500 U.S. 936, 111 S. Ct. 2064, 114 L. Ed.2d 468 (1991). The good-faith exception applies.[6]

Merritt also asserts that the district court erred in admitting his oral confession because officers initiated contact with him after he indicated a desire for an attorney. Law enforcement agents may not interrogate an accused once he or she indicates a desire for counsel. See Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1885, 68 L. Ed.2d 378 (1981).

Merritt's claims arise out of events that occurred during the execution of a search warrant at his residence at approximately six a.m. on July 17, 1993. Merritt answered the door wearing a robe, was taken outside and frisked, and then was given a *Miranda* warning. Although Merritt did not orally state that he refused to

---

[6]    Because we have concluded that the affidavit contained more than conclusory allegations and because the record provides no indication that the magistrate had any bias or interest in issuing the warrant or otherwise dispensed with its neutral and detached role, we reject Merritt's contention that the magistrate abandoned its neutral role.  See United States v. Mueller, 902 F.2d 336, 340 (5th Cir. 1990).

waive his rights, he refused to sign the waiver card, and the word "refuse" was later written on the card. DEA agent Robert Schaefer subsequently read him his rights, which Merritt indicated that he understood, and Merritt then agreed to answer Schaefer's questions. Merritt also signed a consent form to search a storage unit he was leasing. Merritt then made several incriminating statements.

The district court was presented conflicting evidence on the issue of whether Merritt requested an attorney. The court concluded that Schaefer's and Harris County Deputy Roger Harvey's testimony that Merritt did not request an attorney was credible and that Merritt's and his wife's interest in the outcome of the case rendered their testimony that Merritt requested an attorney less credible. The district court's decision is not clearly erroneous. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses . . . that finding, if not internally inconsistent, can virtually never be clear error." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575, 105 S. Ct. 1504, 1512, 84 L. Ed.2d 518 (1985). Merritt's contention that his refusal to sign the waiver form represented an invocation of his right to an attorney similarly fails. See United States v. McKinney, 758 F.2d 1036, 1044-45 (5th Cir. 1985) (rejecting a claim that a defendant's refusal to sign a waiver form constitutes a request for an attorney). The district court did not err in admitting statements Merritt made during the search of his home.

Merritt further asserts that the district court erred in admitting cocaine seized as a result of Merritt's consent to search

15

the storage unit. Because the district court did not err in finding that Merritt did not request an attorney, we need not consider his argument that the cocaine was seized as a result of a *Miranda* violation or the consequences of such a claimed violation.

Merritt also contends that the consent to search was involuntary because it resulted from "extreme psychological pressure." In assessing voluntariness, the court should examine the totality of the circumstances. See United States v. Gonzalez-Basulto, 898 F.2d 1011, 1012-13 (5th Cir. 1990) (outlining factors to consider in determining voluntariness). The district court's decision is reviewed only for clear error. United States v. Ponce, 8 F.3d 989, 997 (5th Cir. 1993).

Merritt was an intelligent person with some college education and was apprised of his *Miranda* rights. Merritt's contention that he was under "great psychological pressure" is not supported by the evidence adduced at the hearing. The district court found credible Schaefer's and Harvey's testimony that the officers did not threaten Merritt, and that they holstered their guns once the residence was secured. Merritt and his wife testified at the suppression hearing that many of the officers were rude; however, both indicated that Schaefer was courteous.[7] Mrs. Merritt also

---

[7] Merritt argues that the officers ignored his requests to use the bathroom, causing him to urinate on himself, which humiliated him and contributed to the psychological pressure. The suppression hearing evidence, however, indicates that the officers took Merritt outside as soon as he opened the door, and that he was kept outside for approximately two minutes. It was during this period that Merritt urinated. We perceive nothing coercive in the officers' failure to give Merritt an opportunity to use the restroom while they were securing the premises.

16

testified that the officers informed Merritt that "if you cooperate with us, it will make it easier for you. We won't have to arrest your wife or tear your house up any more."

The district court was not required to believe Merritt's testimony or proffered evidence at the suppression hearing. In any event, none of the officers' actions which the Merritts testified to were so "offensive to a civilized system of justice that they must be condemned." Miller v. Fenton, 474 U.S. 104, 109, 106 S. Ct. 445, 449, 88 L. Ed.2d 405 (1985) (noting that confessions procured by beatings or other forms of physical or psychological torture cannot be used to obtain a conviction). The district court did not clearly err in finding that Merritt's consent to search was voluntary.


## III. Severance

Ruth Castro and Torres appeal from the district court's denial of their motions for severance on the ground of unfair prejudice resulting from the "spillover effect" of evidence presented against their co-defendants. Castro also appeals on the ground that Torres would have testified in her behalf if their trials had been severed. Joinder was proper in the instant cause because the indictment alleged that the defendants participated in the same conspiracy. See United States v. Rocha, 916 F.2d 219, 228 (5th Cir. 1990), cert. denied, 500 U.S. 934, 111 S. Ct. 2057, 114 L. Ed.2d 462 (1991); see also Fed. R. Crim. P. 8(b). A severance may be granted, however, if it appears that a defendant is prejudiced by the joinder. Fed. R. Crim. P. 14. The district court's denial

17

of severance is reviewed for an abuse of discretion.  <u>United States v. Ellender</u>, 947 F.2d 748, 754 (5th Cir. 1991).

*A. Torres*

Torres asserts that the district court abused its discretion because very little of the evidence presented at trial applied to him; thus, he suffered prejudice from the spillover effect of evidence about his co-defendants.  <u>See</u> <u>United States v. Erwin</u>, 793 F.2d 656, 666 (5th Cir.), <u>cert. denied</u>, 479 U.S. 991, 107 S. Ct. 589, 93 L. Ed.2d 590 (1986).  The evidence indicates, however, that many of the witnesses at trial implicated Torres by linking him to the illicit or suspicious activities of others.[8]  Thus, we are not confronted with the situation where there is meager evidence against one defendant, yet that defendant runs the risk of conviction as the result of a prejudicial spillover.  Torres has not shown specific and compelling prejudice as a result of the denial of severance.  <u>Id</u>. at 665.

*B. Ruth Castro*

Ruth Castro similarly contends that the mountainous evidence

---

[8]    The evidence implicated Torres in (1) buying cars with cash and shipping them to Colombia pursuant to a money-laundering scheme; (2) arranging and coordinating Hughes's various drug-trafficking transports to New York and Chicago and her cash-carrying trip to Miami; (3) meeting with various other co-conspirators; (4) engaging in "heat runs" to detect police surveillance; (6) participating in thirty of the thirty-four phone calls that were played to the jury; and (7) a drug ledger sheet obtained from trash at Torres's and Castro's home, which included cars, amounts of cocaine hidden in each car's secret compartment, and the location to which various amounts were transported.

regarding the participation of other co-defendants did not implicate her. The Supreme Court has indicated that a severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, _ U.S. _, 113 S. Ct. 933, 938, 122 L. Ed.2d 317 (1993). Neither a quantitative disparity in the evidence nor a prejudicial spillover effect is sufficient in and of itself to warrant a severance. United States v. Mitchell, 31 F.3d 271, 276 (5th Cir.), cert. denied, _ U.S. _, 115 S. Ct. 455, 130 L. Ed.2d 363 (1994). Castro cannot show the "specific and compelling prejudice" required in order to necessitate a finding that the district court abused its discretion. Id.

Although the Supreme Court has noted that the risk of prejudice is heightened when defendants have markedly different degrees of culpability, it concluded that severance is not always necessary if less drastic measures, such as limiting instructions, will suffice to cure the risk of prejudice. See Zafiro, _ U.S. at _, 113 S. Ct. at 938; United States v. McKinney, 53 F.3d 664, 674 (5th Cir.), cert. denied, _ U.S. _, 116 S. Ct. 261, 133 L. Ed.2d 184 (1995); Rocha, 916 F.2d at 228 (severance not required in a conspiracy trial even if a disparity in the quantity of evidence exists if district court repeatedly gives cautionary instructions). In the instant cause, the district court cautioned the jury throughout the trial that it must consider the evidence of guilt separately against each defendant.

19

Castro also asserts that her relationship with Torres rendered it impossible for the jury to distinguish between the evidence presented against each of them and weigh it separately. The record does not support this contention. Castro was acquitted on one of the two counts with which she was charged in the indictment. Castro's acquittal on one count supports the conclusion that the jury sorted through the evidence and considered each count separately. McKinney, 53 F.3d at 674; see United States v. Hawkins, 661 F.2d 436, 453 (5th Cir. 1981), cert. denied, 456 U.S. 991, 102 S. Ct. 2274, 73 L. Ed.2d 1287 (1982) (mixed verdicts indicate jury engaged in careful weighing of evidence against each defendant). Castro has not shown that the district court's limiting instructions were insufficient to cure any prejudice from spillover. See Zafiro, _ U.S. at _, 113 S. Ct. at 938.

Castro further contends that a severance was required so that Torres could testify in her behalf. Castro submitted a signed affidavit by Torres, which indicated his willingness to offer exculpatory evidence for Castro. In order to establish a prima facie case warranting severance for the purpose of introducing exculpatory testimony of a co-defendant, the defendant must show: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant would in fact testify if a severance was granted. Rocha, 916 F.2d at 232. The Government argues that Castro failed to make the requisite showing on the latter two prongs.

The Government asserts that Torres's proposed testimony lacked specific exculpatory facts because he stated only that it was *his*

20

*opinion* that Castro did not understand the import of the calls she placed. Because Torres failed to offer any factual basis for this opinion, his proffered testimony lacked probative value. See Byrd v. Wainwright, 428 F.2d 1017, 1021 (5th Cir. 1970) (holding that the court is not required to sever if the testimony is of negligible weight or probative value). Without specific and exonerative facts to support Torres's opinion, his proffer of testimony amounts to little more than a bare, conclusory allegation that Castro was unaware of the content of the messages. See United States v. DeSimone, 660 F.2d 532, 540 (5th Cir. 1981), cert. denied, 455 U.S. 1027, 102 S. Ct. 1732, 72 L. Ed.2d 149 (1982).

Castro also failed to establish that Torres would in fact testify if a severance were granted. See United States v. Kane, 887 F.2d 568, 573 (5th Cir. 1989), cert. denied, 493 U.S. 1090, 110 S. Ct. 1159, 107 L. Ed.2d 1062 (1990). Torres stated in his affidavit that he would be willing to testify if a severance were granted and he *were tried first* because he did not want to waive his Fifth Amendment rights. Torres's offer was contingent upon his trial occurring before Castro's; thus, it did not constitute an unequivocal offer to testify. See United States v. McDonald, 837 F.2d 1287, 1290 (5th Cir. 1988) (co-defendant's offer to testify if he were granted immunity or acquitted at his own trial insufficient to show co-defendant would in fact testify); United States v. Alejandro, 527 F.2d 423, 428 (5th Cir.), cert. denied, 429 U.S. 844, 97 S. Ct. 124, 50 L. Ed.2d 115 (1976) (severance not required where co-defendant does not offer to exculpate defendant contrary to his own penal interest); United States v. Cochran, 499 F.2d 380,

21

391-92 (5th Cir. 1974), cert. denied, 419 U.S. 1124, 95 S. Ct. 810, 42 L. Ed.2d 825 (1975) (no severance required where co-defendants indicated they would testify only if no charges were pending against them).

We have previously determined that it is the district court's prerogative to decide the order in which defendants will be tried. See Byrd, 428 F.2d at 1022. We agree with the Sixth Circuit's conclusion that co-conspirators should not be allowed to control the order in which they are tried. See United States v. Blanco, 844 F.2d 344, 353 (6th Cir.), cert. denied, 486 U.S. 1046, 108 S. Ct. 2042, 100 L. Ed.2d 626 (1988) (offer to testify illusory because co-defendant conditioned testifying on being tried first). Torres's affidavit did not establish that he would in fact testify if a severance were granted and it attempted to usurp the district court's discretion to determine the order in which the defendants would be tried. Accordingly, no abuse of discretion was occasioned by the district court's denial of Castro's severance motions.

## IV.  Continuing Criminal Enterprise

Torres challenges his conviction on one count of engaging in a continuing criminal enterprise ("CCE"), alleging that the district court erred in instructing the jury. To convict Torres, the jury had to find that he acted "in concert with five or more other persons with respect to whom [Torres] occupie[d] a position of organizer, a supervisory position, or any other position of management." 21 U.S.C. § 848(b)(2)(A).

Relying on a Ninth Circuit case, United States v. Jerome, 942

22

F.2d 1328, 1331 (9th Cir. 1991), Torres argues that the district court's failure to instruct that the jury must unanimously agree on the identity of the five persons constituted plain error.  We have specifically held, however, that 21 U.S.C. § 848 does not require the jury to agree unanimously on the identities of the five individuals.  See United States v. Thomas, 12 F.3d 1350, 1366 n.26 (5th Cir.), cert. denied, _ U.S. _, 114 S. Ct. 1861, 128 L. Ed.2d 483 (1994); United States v. Linn, 889 F.2d 1369, 1374 (5th Cir. 1989), cert. denied, 498 U.S. 809, 111 S. Ct. 43, 112 L. Ed.2d 19 (1990).  The district court correctly refused to instruct the jury on unanimity.

## V.  Admission of a Co-Conspirator's Statement

Broussard complains of the district court's admission of the taped conversations between Torres and her because the Government failed to lay a proper predicate for their admission.  Out-of-court statements are not considered hearsay if they are made by a co-conspirator of a party during the course and in furtherance of the conspiracy.  Fed. R. Evid. 801(d)(2)(E).  The Government must establish by a preponderance of the evidence that the declarant and the defendant were involved in a conspiracy and that the statements were made during and in furtherance of the conspiracy.  Bourjaily v. United States, 483 U.S. 171, 175, 107 S. Ct. 2775, 2778-79, 97 L. Ed.2d 144 (1987).

Broussard contends that the evidence *independent of the statement itself* must be sufficient to show the existence of a conspiracy.  To the contrary, the Supreme Court has held that the

23

alleged hearsay statements may be considered in making the Rule 801(d)(2)(E) determination.  See id. at 181, 107 S. Ct. at 2781. In the instant cause, the statements, in conjunction with other evidence, are more than adequate to establish the existence of a conspiracy.

Broussard further asserts that even if a conspiracy existed, the district court erred because the statements were not made in furtherance of the conspiracy.  The conversations concerned Hughes's arrest and the best method of obtaining her release. Although Broussard correctly asserts that the taped conversations did not mention drug-trafficking, the failure to explicitly discuss drugs or drug-trafficking does not automatically indicate that the conversations were not in furtherance of the conspiracy.  Indeed, "in furtherance of a conspiracy" is not to be construed too strictly lest the purpose of the exception be defeated.  United States v. Lechuga, 888 F.2d 1472, 1480 (5th Cir. 1989).  We have "shunned an overly literal interpretation of this [phrase]." United States v. Ascarrunz, 838 F.2d 759, 763 (5th Cir. 1988).

The conversations about Hughes's arrest concerned a significant event that threatened the existence of the conspiracy. Torres and Broussard's conversations implicitly involve how best to avert damage to the ongoing drug conspiracy.  Their discussions do not involve mere idle conversation, which we have previously concluded does not fall within the exception.  See United States v. Means, 695 F.2d 811, 818 (5th Cir. 1983).  We agree with the Seventh Circuit's pronouncement that statements "in furtherance" of a conspiracy can take many forms, including statements seeking to

24

control damage to an ongoing conspiracy and statements made in an attempt to conceal the criminal objectives of the conspiracy. See United States v. Doerr, 886 F.2d 944, 951 (7th Cir. 1989); see also United States v. Smith, 833 F.2d 213, 219 (10th Cir. 1987) ("[S]tatements that explain events of importance to the conspiracy in order to facilitate its operation are considered to be in furtherance of the conspiracy.").

Moreover, Torres's statements in which he emphasized to Broussard the need to use a "safe" pay phone clearly indicates Torres's desire that the conspiracy be kept concealed from DEA agents. Given that concealment is often a necessary part of a conspiracy, statements made to aid the concealment are made in furtherance of the conspiracy. See United States v. Esacove, 943 F.2d 3, 5 (5th Cir. 1991); United States v. Del Valle, 587 F.2d 699, 704 (5th Cir.), cert. denied, 442 U.S. 909, 99 S. Ct. 2822, 61 L. Ed.2d 274 (1979).

We conclude that the district court did not clearly err in finding the recorded conversations were in furtherance of the conspiracy. See United States v. Stephens, 964 F.2d 424, 434 (5th Cir. 1992) (district court's finding of "in furtherance" is reviewed for clear error). The taped conversations were properly admitted.

## VI. Evidence of Prior Convictions

Broussard and Torres challenge the district court's admission of their prior convictions at trial. The Government introduced evidence that Torres had been convicted in 1981 of knowingly and

25

intentionally conspiring and possessing with intent to distribute marijuana and was sentenced to four years. The Government also presented evidence that Broussard was placed on ten-years deferred adjudication in 1991 for possession of marijuana in a usable quantity of more than fifty but less than 200 pounds. Evidence of extrinsic acts may be admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). The district court's admission of extrinsic acts evidence may be reversed only upon a clear showing of an abuse of discretion. United States v. McCarty, 36 F.3d 1349, 1353 (5th Cir. 1994).

In assessing violations of Rule 404(b), we engage in a two-part test: (1) the evidence is relevant to an issue other than the defendant's character; and (2) the evidence possesses probative value that is not substantially outweighed by the danger of unfair prejudice and is otherwise admissible under Rule 403. United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978), cert. denied, 440 U.S. 920, 99 S. Ct. 1244, 59 L. Ed.2d 472 (1979). The first prong of Beechum is satisfied as to Torres and Broussard. The mere entry of a not guilty plea in a conspiracy case raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence. Bermea, 30 F.3d at 1562; United States v. Parziale, 947 F.2d 123, 129 (5th Cir. 1991), cert. denied, 503 U.S. 946, 112 S. Ct. 1499, 117 L. Ed.2d 638 (1992). Thus, our task is simply to determine whether the requirements of Rule 403 are satisfied.

The evidence of the prior convictions was clearly probative on

the issue of intent. Torres had previously been convicted of conspiring with intent to distribute marijuana, which bears marked similarity to offenses charged in the instant cause. Broussard's recent conviction for possession of fifty to 200 pounds of marijuana was similarly highly probative of her knowledge of the drug conspiracy and her intent to participate. See Bermea, 30 F.3d at 1562 (noting that in drug offense cases courts frequently find extrinsic drug offense evidence admissible); United States v. Harris, 932 F.2d 1529, 1534 (5th Cir.), cert. denied, 502 U.S. 897, 112 S. Ct. 270, 116 L. Ed.2d 223 (1991) (holding that proof of prior drug activities is more probative than prejudicial).

Torres principally argues that he suffered unfair prejudice because his prior conviction was more than ten years old. Although the remoteness of the extrinsic acts evidence may weaken its probative value, the age of the prior conviction does not bar its use under Rule 404. United States v. Rubio-Gonzalez, 674 F.2d 1067, 1075 (5th Cir. 1982). The fact that the offenses involved different narcotics does not unfairly prejudice Torres in light of the fact that both offenses involved conspiracy to possess with the intent to distribute. See United States v. Devine, 934 F.2d 1325, 1345-46 (5th Cir. 1991), cert. denied, 502 U.S. 1065, 112 S. Ct. 954, 117 L. Ed.2d 121 (1992) (determining that the defendant's prior cocaine dealing was admissible in trial for conspiracy to manufacture and sell methamphetamine).

Broussard argues that the admission of her 1991 conviction was unfairly prejudicial because it led to her conviction while most of her family and friends were acquitted. She argues that the

27

extrinsic acts evidence caused the jury to find her guilty in the absence of sufficient evidence that she committed the charged crimes.  The Government's case, however, was stronger against her than other family members because the Government had tapes of incriminating conversations between Broussard and Torres.[9]  The evidence was not so weak against Broussard that the jury was forced to rely on the prior conviction as evidence that Broussard committed the currently charged offenses.  Broussard was not unfairly prejudiced by the admission of the prior conviction.

Moreover, any prejudice Torres and Broussard suffered was minimized by the district court's limiting instruction, which was given immediately after the extrinsic offenses were offered in evidence.  See United States v. Gordon, 780 F.2d 1165, 1174-75 (5th Cir. 1986); see also Devine, 934 F.2d at 1346; United States v. Henthorn, 815 F.2d 304, 308 (5th Cir. 1987).  We conclude that the district court did not abuse its discretion in admitting the prior convictions of Torres and Broussard.

## VII.  Sentence Enhancement Based on Weapons found in Home

Merritt contends that the district court erred in increasing his offense level by two points for three guns found in his home during a search, arguing that the Government failed to establish that the weapons were connected to the offense and that increasing

---

[9]   Broussard's argument is also undermined by the fact that the Government introduced evidence of a prior offense committed by Leslie Jeanmard, a co-indictee whom the jury acquitted.  As the Government correctly asserts, admission of the extrinsic bad act could not therefore be the sole reason the jury found Broussard guilty; otherwise it would have similarly convicted Jeanmard.

the level violates his constitutional rights. The Sentencing Guidelines provide for a two-level increase if "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1) (1994). The adjustment "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. § 2D1.1 cmt. 3. A district court's decision to apply section 2D1.1(b)(1) is reviewed only for clear error. Devine, 934 F.2d at 1339.

In the instant cause, the three guns were found in the same home where large amounts of cocaine were stored; two of the guns were found in the same dresser drawer as some of the cocaine. Thus, the Government met its burden under section 2D1.1(b)(1). United States v. Eastland, 989 F.2d 760, 770 (5th Cir.), cert. denied, __ U.S. __, 114 S. Ct. 246, 126 L. Ed.2d 200 (1993) (concluding that enhancement is proper if the guns are found at the same location where drugs are stored or where a drug transaction occurred); see United States v. Mergerson, 4 F.3d 337, 350 (5th Cir. 1993), cert. denied, __ U.S. __, 114 S. Ct. 1310, 127 L. Ed.2d 660 (1994); United States v. Menesses, 962 F.2d 420, 428-29 (5th Cir. 1992). The district court did not clearly err in enhancing Merritt's sentence by two levels.

Merritt alternatively argues that the enhancement chills his constitutional right to possess weapons. See Stinson v. United States, __ U.S. __, 113 S. Ct. 1913, 1915, 123 L. Ed.2d 598 (1993) (holding that the Guidelines commentary is authoritative unless it violates the Constitution). Merritt concedes that the Second Amendment, which concerns possession of weapons for a well-

29

organized militia, is inapplicable, but asserts that the right to possess weapons is among the rights reserved to citizens by the Ninth Amendment.  U.S. Const. amend. IX.[10]  Merritt does not point to any authority in support of his argument.[11]  Nor does he advance any rationale to support his assertion that the right to possess weapons is among the rights reserved to citizens under the Ninth Amendment.  Merritt relies solely on a law review article to support his contention.  See Nicholas J. Johnson, Beyond the Second Amendment:  An Individual Right to Arms Viewed Through the Ninth Amendment, 24 Rutgers L.J. 1 (1992).  We are not persuaded to discover or declare a new constitutional right to possess weapons under the Ninth Amendment on the basis of Merritt's proffered "authority."

Moreover, Professor Johnson's article is premised on the construct of self-defense.  In the instant cause, Merritt presented evidence that he used the guns to "hunt and practice shooting guns just for the fun of it."  Because Merritt's possession of the firearms was not for personal security, his argument exceeds Professor Johnson's rationale for the novel idea that possession of

---

[10]     The Ninth Amendment provides:

> The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

[11]     Although neither this Court nor the Supreme Court has addressed the issue of whether the Ninth Amendment encompasses a right to possess firearms, two circuits have rejected this contention.  See Quilici v. Village of Morton Grove, 695 F.2d 261, 271 (7th Cir. 1982), cert. denied, 464 U.S. 863, 104 S. Ct. 194, 78 L. Ed.2d 170 (1983); United States v. Warin, 530 F.2d 103, 108 (6th Cir.), cert. denied, 426 U.S. 948, 96 S. Ct. 3168, 49 L. Ed.2d 1185 (1976).

30

firearms is constitutionally protected under the Ninth Amendment. We reject Merritt's argument that the sentence enhancement chills a constitutional right.

The district court did not err in increasing Merritt's offense by two levels.

## CONCLUSION

Based on the forgoing discussion, we affirm the convictions of Broussard, Torres, Ruth Castro, Raphael Castro, and Merritt.

AFFIRMED.