EMILIO M. GARZA, Circuit Judge,
dissenting:
I dissent from the majority opinion’s holding that the district court did not abuse its discretion by admitting Joshua’s prior possession and concurrent statement under Rule 404(b). Because I conclude the district court did abuse its discretion by admitting the extrinsic evidence and the error was not harmless, I would VACATE the conviction and REMAND for a new trial.
First, while I agree that Joshua’s concurrent statement is relevant to Joshua’s motive, Joshua’s prior possession is not and thus fails even the first step of the Beechum analysis. For extrinsic evidence to be admissible under the first step of the Beechum analysis, the evidence must be “relevant to an issue other than the defen *477 dant’s character.” United States v. Beechum, 582 F.2d 898, 911 (5th Cir.1978). While the district court held the prior possession was relevant to establishing Joshua’s motive, intent, or identity, on appeal the Government only contends the evidence is relevant to establishing Joshua’s motive.[1] Evidence is relevant to motive if it helps establish why the defendant committed the offense. United States v. Benton, 637 F.2d 1052, 1056 (5th Cir. Unit B 1981). The majority holds Joshua’s prior possession helps establish why he committed the charged offense without explaining how. The cases the majority cites in support of the relevancy of Joshua’s prior possession, United States v. Bitterman, 320 F.3d 723 (7th Cir.2003) and United States v. Weems, 322 F.3d 18 (1st Cir.2003), are readily distinguishable. In both cases extrinsic evidence of the prior possession or drug use was relevant to establishing why the defendant committed the offense in question. In Bitterman evidence of the defendant’s prior drug use helped establish why the defendant committed the robbery: to support his drug habit. 320 F.3d 723, 727 (7th Cir.2003). In Weems, evidence of drug dealing at the house where the defendant was arrested helped establish why the defendant carried a weapon to the residence: for protection in a location where there was unlawful activity occurring. 322 F.3d 18, 25 (1st Cir.2003). The majority does not cite and nor have we located any authority holding that in an ordinary drug deal prosecution a defendant’s prior possession is relevant to establishing his motive to commit the instant drug offense.[2] That Joshua’s prior possession helps establish that he was a drug dealer is unhelpful: the fact Joshua *478 dealt drugs in the past is relevant only to Joshua’s propensity to deal drugs but not to his motive to deal drugs.[3] See United States v. Varoudakis, 233 F.3d 113, 118 (1st Cir.2000) (holding for evidence to be admissible under Rule 404(b) its relevance “must not include bad character or propensity as a necessary link in the inferential chain”) (internal quotation marks omitted).
The reason the majority does not explain why Joshua’s prior possession helped establish his motive to commit the charged drug offense is that it does not. The relevance of extrinsic evidence of motive turns on two different inferences. First, the extrinsic act must support an inference of a mental state, such as desire for money, jealousy, revenge, etc. 22ACharles Alan Wright & Victor James Gold, Fed. Prac. & Proc. Evid. § 5240 (2d ed.2013); e.g., United States v. Arnold, 773 F.2d 823, 833 (7th Cir.1985) (holding evidence of defendants’ loan sharking activities admissible to show motive for bribery of witness before grand jury investigating loansharking). The extrinsic act can prove mental state in two ways: (1) the extrinsic act can cause the mental state, see e.g., United States v. Stumes, 549 F.2d 831, 833 (8th Cir.1977) (holding evidence of prior conviction of manslaughter admissible to show vengeful motive for sending threatening letters to witnesses), or (2) the extrinsic act may be a consequence of the mental state, see, e.g., United States v. Garcia-Meza, 403 F.3d 364, 368 (6th Cir.2005) (holding prior assault on wife admissible to show husband’s jealousy as motive for her murder).
Second, the mental state shown must be, either directly or through appropriate inferences, causally related to some other issue in the case. Wright, supra, § 5240. Where there is no evidence linking the charged crime to the uncharged crime the latter proves the former only by inference to the defendant’s character and is thus irrelevant to motive. United States v. Brown, 880 F.2d 1012, 1014-15 (9th Cir.1989) (holding where court could not see how defendant’s prior assaults established motive to commit charged murder admission of prior assaults was abuse of discretion). Here, the prior drug possession does not support an inference of any mental state (e.g. a desire for money, jealousy, or revenge) that is casually related to an issue in the case. The majority holds the prior possession is relevant to establishing that Joshua was a dealer rather than merely a user of drugs, but this is propensity evidence, not evidence of a mental state that explains Joshua’s involvement in the charged offense.[4] Accordingly, Joshua’s prior possession is not relevant to establishing his motive to commit the *479 charged offense and fails even the first step of the Beechum analysis.
Second, both Joshua’s prior possession and his concurrent statement fail step two of the Beechum analysis. For extrinsic evidence to be admissible under the second step of the Beechum analysis, its prejudicial effect must not substantially outweigh its probative value. See Beechum, 582 F.2d at 913. The prejudicial effect of extrinsic evidence substantially outweighs its probative value when the relevant exception is uncontested because the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudicial effect. United States v. Roberts, 619 F.2d 379, 382 (5th Cir.1980) (citing Beechum, 582 F.2d at 914). Accordingly, courts have generally held motive evidence is admissible only where the defendant contests the issue of motive or where motive is an element of the offense. See, e.g., United States v. Williams, 585 F.3d 703, 708 (2d Cir.2009) (holding extrinsic evidence of defendant’s motive to possess gun inadmissible where defendant did not contest the issue of motive); United States v. Siegel, 536 F.3d 306, 317-18 (4th Cir.2008) (holding 404(b) motive evidence admissible where murder statute required Government to prove not only that defendant killed victim but that she killed victim for purpose of preventing him or anyone else from providing law enforcement with information about federal crimes she committed); United States v. Johnson, 27 F.3d 1186, 1191-93 (6th Cir.1994) (holding trial court improperly instructed jury, in trial for possession of cocaine base with intent to distribute, that evidence of defendant’s similar acts of possession was admissible to show motive, where motive was not element of crime charged and defendant did not contest motive); United States v. Tai 994 F.2d 1204, 1210 (7th Cir.1993) (holding 404(b) evidence admissible under intent exception but not motive exception where motive not contested).
Here, the Government had little need for extrinsic evidence of motive and any probative value the evidence may have had was necessarily slight. The majority holds that Joshua’s motive was contested because the issues of motive and identity “were intertwined here given Joshua’s theory of mistaken identity, premised in part on his argument that he was principally a user.” Ante, at 473. The majority might be correct if the defense had disputed any material aspect of the Government’s case or that either Nathaniel or Joshua was the Expedition driver. The defense did not, however, challenge any feature of the drug transaction except for the identity of the man who handed the drugs to the informant.[5] The defense did not contest that Joshua (as well as Nathaniel) had motive.[6] No aspect of Joshua’s defense suggested *480 that he did not have motive to commit the offense. Cf. United States v. Benton, 852 F.2d 1456, 1456 (6th Cir.1988) (holding defendant made motive issue in drug conspiracy prosecution by advancing theory he was conducting investigation of drug dealing). Therefore the probative value of motive evidence was necessarily slight. Moreover, the prejudicial effect of admitting Joshua’s prior possession and statement that he sold crack cocaine “because he did not know how to do anything else and that he had mouths to feed” was great. The statement established not only that Joshua dealt drugs, a fact also established by Roger’s testimony, but that dealing drugs was the only way Joshua knew how to make money, greatly increasing the risk that the jury would convict him for his bad character.[7] Furthermore, Joshua’s prior possession of a distributable amount of cocaine is highly similar to the charged offense, compounding its prejudicial effect. See Sanchez, 988 F.2d at 1394. Although the district court issued a limiting instruction after Johnson testified, we have held that where the government’s evidence of the defendant’s guilt is weak, a limiting instruction may not suffice to cure the potential prejudice. See United States v. McCarter, 316 F.3d 536, 538-39 (5th Cir.2002). As such, the district court abused its discretion by admitting Joshua’s prior possession and concurrent statement.[8]
Because I conclude the admission of the extrinsic evidence was an abuse of discretion, I proceed to consider whether the error was harmless. “The government has the burden of establishing harmlessness beyond a reasonable doubt.” United States v. McCall, 553 F.3d 821, 827 (5th Cir.2008).' If the Government fails to meet its burden, we must reverse the error. An error is harmless if a court, “after a thorough examination of the record is able to conclude beyond a reasonable doubt that *481 the jury verdict would have been the same absent the error.” United States v. Barraza, 655 F.3d 375, 382 (5th Cir.2011), cert. denied, — U.S. -, 132 S.Ct. 1590, 182 L.Ed.2d 203 (2012). I cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the admission of the extrinsic act evidence. Aside from Johnson’s testimony, the evidence against the brothers was in equipoise: Quamlisha identified Joshua as the Expedition driver and Roger testified that Nathaniel conducted the transaction. The undisputed trial testimony established that Joshua and Nathaniel look remarkably alike. While Joshua wore a temporary gold grill, Nathaniel had permanent gold teeth. Roger testified that while both brothers were involved in dealing drugs, he sent Nathaniel to conduct the deal in question. Roger’s phone records showed telephone calls to or from Nathaniel’s and Quamlisha’s numbers, but not to or from Joshua’s number, on the day of the transaction. Roger testified that Joshua purchased only small quantities of cocaine, usually about a gram. Roger testified that he knew Nathaniel, not Joshua, as “LiF Maine” and “Maine Maine.” Obviously the credibility of the sole witness to identify Joshua as the driver of the Expedition is crucial, and there are multiple reasons to question the credibility of that identification. Quamlisha was not acquainted with Joshua prior to the instant drug transaction, and her only opportunity to view the driver of the Expedition was during a three-minute drug transaction during which the driver never exited the vehicle. When Quamlisha initially identified the driver of the Expedition as Joshua, she did not select him out of a photographic lineup, but merely confirmed that the only photograph Stiles showed her was a photograph of the driver. See Bloodworth v. Hopper, 539 F.2d 1382, 1383 (5th Cir.1976) (“The display of pictures solely of the suspect is one of the most suggestive and hence most objectionable methods of identification.”). Quamlisha admitted she used marijuana on a daily basis at the time of the transaction. As such, we cannot say that the Government’s evidence of Joshua’s guilt is so strong that we can conclude beyond a reasonable doubt that absent the error the jury would still have convicted Joshua. Accordingly, the Government failed to meet its burden of proving beyond a reasonable doubt that the error was harmless.
For these reasons, I would VACATE the conviction and REMAND for a new trial. Respectfully, I dissent.

. Accordingly, the Government waived the issues of identity and intent. Fed. R.App. P. 28(a)(9)(A). As such, one need consider only whether the evidence would be admissible to prove Joshua's motive, but in any event, the evidence is not admissible to establish identity or intent. While there are forms of identity evidence other than modus operandi, neither the Government nor the district court suggested those forms of identity evidence were applicable here. See United States v. Carrillo, 981 F.2d 772, 775 (5th Cir.1993) (considering admissibility of extrinsic evidence under only modus operandi exception because Government sought to admit it only for that purpose). To be admissible, "other acts” evidence offered to prove modus operandi must be so similar to the charged offense "that they evince a signature quality-marking the extraneous act as the handiwork of the accused.” United States v. Sanchez, 988 F.2d 1384, 1393-94 (5th Cir.1993) (internal quotation marks omitted). As Joshua’s prior possession is not so similar to the charged offense as to constitute modus operandi evidence, the evidence is inadmissible to establish identity. The intent exception is also unavailing. While we have allowed extrinsic evidence of intent in drug possession or conspiracy cases where criminal intent was disputed, see e.g., United States v. Broussard, 80 F.3d 1025, 1040 (5th Cir.1996) (holding no unfair prejudice from admission of conviction for possession of 50 to 200 pounds of marijuana with intent to distribute as evidence of intent to distribute cocaine), here because intent is not contested the probative value of intent evidence is minuscule. The Government firmly established and Joshua did not dispute that the driver of the Expedition intended to distribute drugs. The only question for the jury was whether Joshua or Nathaniel was the driver of the Expedition.

. In a prosecution for drug conspiracy we held that evidence that (1) an officer found $350,000 in the defendant’s car and (2) an officer found $26,000 and a pound and a quarter of cocaine in the defendant's vehicle was probative of "motive and intent to carry drugs and money interstate.” United States v. Vaquero, 997 F.2d 78, 83 (5th Cir.1993). Vaquero, however, applied plain error review, and involved an interstate drug conspiracy involving hundreds of thousands of dollars. Id. In possession with intent to distribute prosecutions we have found evidence of prior drug possessions relevant to establishing intent, but not motive, to commit the charged drug offense. E.g., United States v. Arnold, 467 F.3d 880, 885-86 (5th Cir.2006).

. The fallacy of holding the prior possession is relevant to Joshua’s motive because it establishes that he is a drug dealer is readily apparent. If that were so, in every prosecution for X crime the fact the defendant previously committed X crime would be relevant to the defendant’s motive to commit X crime. While we have consistently held such logic applicable in the context of establishing a defendant's intent to commit X crime, e.g., United States v. Booker, 334 F.3d 406, 412 (5th Cir.2003), we have, for good reason, never applied this logic to motive. See United States v. Varoudakis, 233 F.3d 113, 120 (1st Cir.2000).

. The majority urges that the prior possession was admissible to counter the defense’s strategy of portraying Joshua as primarily a user, not a dealer, of cocaine, ante, at 473, but this does not explain how the prior possession was relevant to Joshua's motive. If the defense opened the door to character evidence, then perhaps the evidence might have been admissible as propensity evidence under Federal Rule of Evidence 404(a)(2)(A), but that is not the question before us.

. Nothing in this dissent suggests that a defendant’s ability to "concede” one of the 404(b) non-character purposes will necessarily “prevent the government from introducing evidence proving this point.” Cf. ante, at 474 n. 7. In evaluating whether 404(b) evidence may be admitted courts must exercise their discretion under Rule 403. See also Beechum, 582 F.2d at 911. Of course, a defendant’s choice to "concede” may impact the balance of interests. In this particular case, Joshua did not contest intent or motive. Thus, evidence offered to establish intent or motive had little probative value.

. Accordingly, the majority’s murder hypothetical is not on point. Ante, at 473-74 n. 6. Here, unlike in the majority’s hypothetical, Joshua is conceding not that somebody committed the crime but that either he or his brother committed the drug deal. Furthermore, Joshua did not contest that he, like his brother, had a motive to commit the drug deal. Unlike in murder prosecutions, in possession with intent to distribute prosecutions, motive is generally uncontested because it is obvious: to make money. Harmelin v. Michigan, 501 U.S. 957, 1025, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (White, J., dissenting) *480 ("[TJhere is usually a pecuniary motive when someone possesses a drug with intent to deliver it....”).

. The majority holds the prejudicial effect of Johnson’s testimony was minimal in light of Roger’s testimony. Ante, at 474. Johnson's testimony was, however, significantly more damaging to Joshua’s character than Roger's testimony. While Roger’s testimony implicated both Joshua and Nathaniel as drug dealers, Johnson’s testimony was damaging only to Joshua. Moreover, although Roger testified that Joshua used cocaine and participated in drug deals, Roger testified that Joshua usually purchased about a gram, a much smaller amount than the 21 grams Johnson testified he found in Joshua’s pocket. While Roger merely testified that Joshua took part in drug deals that occurred in his home, Johnson’s testimony established that Joshua’s primary source of income was selling crack cocaine. Therefore, even accounting for Roger’s testimony that Joshua purchased and used cocaine and was involved in drug deals, the minuscule probative value of Johnson’s testimony was substantially outweighed by its prejudicial effect.

. The district court also held that Joshua’s prior possession was relevant to establishing his intent or identity. The majority correctly notes that we may affirm the district court on any basis in the record. Ante, at 474 n. 7. It further suggests that Rule 404(b)’s "intent” prong provides such a basis. Id. This is not necessarily so. The prior possession evidence, if treated as proof of Joshua’s intent to distribute in the current case, may indeed satisfy the first step of the Beechum analysis— relevance to an issue other than the defendant's character. See, e.g., Broussard, 80 F.3d at 1040 (finding prior possession with intent to distribute conviction relevant to the question of intent in a subsequent possession with intent to distribute charge). Under the second step, however, the intent argument fails on the same grounds as motive. Because intent was not a contested issue at trial, the probative value of evidence addressing this point is low and is substantially outweighed by the dangers of unfair prejudice discussed above.