NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 27, 2007
Decided January 4, 2008

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-4158

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | |
| | No. 05 CR 20047 |
| GREGORY L. MARSHALL, *Defendant-Appellant.* | Michael P. McCuskey, *Chief Judge.* |

**O R D E R**

A jury convicted Gregory Marshall of possessing with the intent to distribute various amounts of crack, heroin, and powder cocaine, which were found in his home during the execution of a search warrant. The district court (Judge Michael McCuskey) denied Marshall's motion for a judgment of acquittal and a new trial and sentenced him to a prison term of 260 months. Marshall now challenges the court's failure to conduct a <u>Franks</u> hearing and its decision to admit certain evidence at trial. He also claims that his sentence is unreasonable. The evidentiary issue--which consumed the bulk of the discussion at oral argument--concerns the admission of evidence regarding a controlled buy between Marshall and a confidential informant 3 days before the charged offense.

The facts accepted at trial were that, in September 2005, Kankakee (Illinois) police officer Kenneth Mallindine received information from a confidential informant that Marshall was selling drugs that the informant could purchase. Mallindine subsequently instructed the informant to purchase crack from Marshall. The day of the buy, Mallindine and the informant met at the Kankakee police station, which was within walking distance of Marshall's house. At the station, Mallindine searched the informant for drugs or money and found none. He then gave the informant $50 cash to purchase crack from Marshall.

The informant left the police station on foot, with Mallindine and another officer following approximately 60 yards behind in a surveillance vehicle. Mallindine kept the informant in his sights at all times and used binoculars to observe the events, but he did not videotape or make an audio recording of the buy. The informant walked to the corner and stopped across the street from Marshall's house. The informant then made a cellular telephone call. Within a few minutes, Marshall walked out of his house and met the informant. A few minutes after that, the two separated. The informant walked back to the police station where he met Mallindine. The informant handed him a plastic bag containing crack. Mallindine again searched the informant for drugs or money and found none.

Based on Mallindine's affidavit setting forth these events, the Kankakee officers obtained a warrant to search Marshall's house. The warrant was executed 3 days later. During the search, Mallindine found a Desenex can in the medicine cabinet of the home's only bathroom. He discovered that the can contained a false compartment accessed by unscrewing the bottom of the can. That compartment contained a plastic bag with 30.7 grams of powder cocaine, 19 separate plastic bags containing a total of more than 20 grams of crack, and another plastic bag containing 1.6 grams of heroin. More of the same kind of bags were found in the kitchen. In the only bedroom's closet, officers found $710 in a bag and another $700 in the pocket of a shirt. In the same bedroom, officers also found Marshall's driver's license and a gas bill addressed to him at that address.

A grand jury subsequently indicted Marshall on three counts: (1) knowingly possessing more than five grams of crack with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); (2) knowingly possessing heroin with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and (3) knowingly possessing cocaine with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Marshall pled not guilty, and a jury trial followed.

Before jury selection, Marshall asked to speak to the court about a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Marshall stated that, at some earlier time, his lawyer had informed the court that he would be seeking such a hearing. After Judge McCuskey ascertained Marshall's understanding of a Franks hearing, he discussed with him the difficult burden that a defendant faces in those hearings. Marshall indicated that he was aware of the burden but that his attorney had previously told the court that he would be filing a Franks motion. Marshall's attorney then explained that he did indeed investigate the issue but concluded that the evidence was insufficient to support a motion. Upon Marshall's further insistence that his attorney had promised to file a Franks motion, Judge McCuskey asked Marshall if he wanted to represent himself. Marshall declined but continued to insist that the officers were lying because he did not participate in the controlled buy with the informant in the days before the search was executed. Judge McCuskey assured Marshall that Mallindine would be cross-examined vigorously concerning his observations.

Before testimony was received at his trial, Marshall's counsel made a "record objection" to the evidence concerning the controlled buy. Judge McCuskey asked the prosecutor if the evidence was being offered to prove propensity. The prosecutor stated that it was only being offered to explain the actions of the police officers in securing the search warrant and as direct evidence of Marshall's intent to distribute the drugs. Judge McCuskey overruled the objection but agreed to give Marshall's proposed limiting instruction to the jury at the appropriate time.

The parties revisited this issue after the first day of testimony. Judge McCuskey informed the lawyers that he had admitted the evidence both to explain later acts of the police officers and under Federal Rule of Evidence 404(b) to prove Marshall's knowledge and intent. Marshall's attorney argued that the evidence was not relevant and was inadmissible direct evidence of propensity. Judge McCuskey disagreed, stating that the evidence was not being offered for "propensity purposes" but rather as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." He also determined that the probative value of the evidence outweighed its prejudicial effect. Judge McCuskey ultimately ruled that the evidence would "come in for knowledge." A limiting instruction reflecting this decision was given to the jury prior to closing arguments.

After the jury returned its verdict and Marshall's subsequent motion for a judgment of acquittal and a new trial was denied, the parties proceeded to sentencing. The presentence report (PSR) set Marshall's base offense level at 28 and his criminal history category at V. However, Marshall's prior drug convictions made him a career offender under the sentencing guidelines. As a result, his

offense level increased to 37 and his criminal history category increased to VI. This established a guidelines range of 360 months to life imprisonment.

Marshall informed the court that he had no objections to the PSR. The government recommended that he receive a sentence of 360 months. Marshall argued for an unspecified sentence of less than 360 months. Judge McCuskey ultimately sentenced Marshall to 260 months imprisonment. He explained that the sentence was motivated, in part, by a desire to allow Marshall--who was 52 years old at the time--to see his young children some day outside of a prison setting.

There are four issues on appeal: (1) whether Judge McCuskey erred in declining to conduct a Franks hearing; (2) whether Judge McCuskey erred in admitting evidence of the controlled buy under Rule 404(b); (3) whether Mallindine's testimony about the controlled buy was inadmissible hearsay and violated Marshall's confrontation rights; and (4) whether the sentence of 260 months imprisonment was reasonable. We address the Franks issue first.

A Franks hearing is required "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [] the allegedly false statement is necessary to the finding of probable cause[.]" Franks, 438 U.S. at 155-56. A defendant faces a difficult burden in establishing these elements. His allegations must be more than conclusory, supported by more than a mere desire to cross-examine, and accompanied by a specific offer of proof. Id. at 171.

Marshall argues that he met his burden of making a "substantial preliminary showing." We disagree. The record reveals that Marshall did not even request a Franks hearing. Rather, he merely sought to voice his displeasure with his attorney's decision not to seek one. Marshall stated that his attorney told him that they would be filing a Franks motion, and he wanted Judge McCuskey to ask his attorney why he failed to do so. Marshall's lawyer then explained that, after investigating the matter, he determined that filing such a motion would be "frivolous." This answer did not satisfy Marshall, but he declined to represent himself and never actually asked for a Franks hearing.

Even if his comments could be construed as a request for a Franks hearing, Marshall fell well short of making the requisite showing. He neither advanced specific allegations nor produced affidavits or other reliable statements of proof. All Marshall offered was his unsworn statement that he was not the individual who sold drugs to the informant. As we discussed, a conclusory statement alleging that

an affidavit is false, without more, is insufficient to trigger the need for a <u>Franks</u> hearing.  Thus, Judge McCuskey did not err in failing to conduct one.

The second issue is whether Judge McCuskey erred in admitting evidence of the controlled buy under Rule 404(b).  We review a district court's decision regarding the admissibility of such evidence for an abuse of discretion.  <u>United States v. Williams</u>, 238 F.3d 871, 874 (7th Cir. 2001).

Rule 404(b) provides that otherwise inadmissible evidence of prior bad acts may nevertheless be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b). We apply a four-part test to determine the admissibility of evidence under Rule 404(b) and will find no error if:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

<u>United States v. Sebolt</u>, 460 F.3d 910, 916 (7th Cir. 2006).  Marshall contends that Judge McCuskey abused his discretion when he found that the first, third, and fourth prongs of the test were satisfied.

Marshall's major complaint is that the evidence of the controlled buy did not establish a matter in issue other than his propensity to commit a crime.  We disagree.  Judge McCuskey spent a lot of time discussing this question and clearly and correctly found that the evidence was being offered to establish an element of the charged offenses--knowledge.  Marshall was charged with knowingly possessing various drugs with intent to distribute them.  Thus, the government bore the burden of proving beyond a reasonable doubt, among other things, that Marshall "knowingly" had the power and intention to exercise control over the drugs and that he "knew" that they were indeed drugs.  The evidence of the prior drug sale, which occurred just 3 days before the charged offense, tended to prove that Marshall knew about and intended to control the drugs later found in his house.

In addition, Marshall himself raised the issue of knowledge. A large part of his defense at trial was that he did not knowingly possess the drugs. He presented evidence that other people had access to his house and that someone else might have placed the Desenex can, which appeared normal from the outside, in his bathroom without his knowledge. Marshall requested and received a "mere presence" instruction, which told the jury that it could not convict him solely because drugs were found in his house. The controlled buy was therefore also relevant to disproving Marshall's theory of the case.

Marshall relies on our opinion in United States v. Jones, 389 F.3d 753 (7th Cir. 2004), to support his argument that the buy was only relevant to prove propensity. In Jones, a defendant unsuccessfully sought to exclude evidence of two prior drug convictions at trial. On appeal, we found the admission of this evidence problematic because it seemed to only show propensity. We explained that determining the purpose of proffered evidence requires "both specific evidence about the prior conviction and a well articulated theory of the legitimate purpose that it allegedly serves for the present case." Id. at 757. There, however, the government did not introduce any facts associated with the defendant's prior convictions, and its counsel repeatedly told the jury that the defendant's prior convictions showed that he was a drug dealer.

None of the concerns discussed in Jones are present here. The government offered specific evidence about the controlled buy, which occurred just days before the charged offense. It also advanced a well-articulated theory of the legitimate purpose of the evidence--namely, to prove that Marshall had the necessary mental state (knowledge) for the jury to convict. Finally, there is no allegation that the government misled the jury. On the contrary, the prosecutor explained during his closing remarks that the evidence of the controlled buy was presented to "shed some light on whether or not [Marshall] knowingly possessed that Desenex can that was found in his bathroom in his home[.]" Because evidence of the controlled buy tended to prove Marshall's knowledge, Judge McCuskey did not err in determining that it was not offered merely to prove propensity.

Marshall also argues that the evidence of the controlled buy was insufficient to support a jury finding that he distributed the drugs to the informant. We disagree. Mallindine testified that he searched the informant, watched the informant meet Marshall (whom Mallindine later identified in court as the man he saw), and continually observed the informant until he returned and turned over the drugs he did not have with him when he met Marshall. This testimony allowed a jury to reasonably conclude that Marshall dealt the drugs to the informant. See United States v. Long, 86 F.3d 81, 85 (7th Cir. 1996) (collecting cases and finding

that eyewitness testimony was sufficient to support a jury finding that a defendant committed a similar act to the charged offense). Marshall insists that Mallindine's account lacks credibility because he was too far away from the transaction and did not take video or audio recordings. This argument, of course, goes to the weight that should be given to testimony, not its admissibility.

Marshall finally claims that the probative value of the evidence did not outweigh the danger of unfair prejudice. We disagree. As discussed, knowledge was not only an element of the crime but also a key to Marshall's defense. Evidence that Marshall was observed leaving his house to make a sale of the same type of drugs found in his home 3 days later was clearly probative of his knowledge. Because it was a similar act to the charged offense, this evidence was also clearly prejudicial. But Judge McCuskey alleviated any <u>unfair</u> prejudice by giving a limiting instruction, the content of which Marshall does not challenge. <u>See</u> <u>United States v. Denberg</u>, 212 F.3d 987, 994 (7th Cir. 2000) (recognizing that "limiting instructions are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence"). Thus, Judge McCuskey did not abuse his discretion in admitting evidence of the controlled buy under Rule 404(b).

The third issue is whether Mallindine's testimony about the controlled buy was inadmissible hearsay and violated Marshall's confrontation rights. Marshall's counsel failed to make this objection at trial, so our review is only for plain error. <u>United States v. Bitterman</u>, 320 F.3d 723, 727 (7th Cir. 2003). Under the plain error doctrine, reversal is appropriate only where the district court's error is "clear, prejudicial, and affects substantial rights." <u>United States v. Carrillo</u>, 269 F.3d 761, 768 (7th Cir. 2001) (internal citation omitted).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). A "statement" in the hearsay context is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Fed. R. Evid. 801(a). The admission of "testimonial" hearsay against a defendant may violate his Sixth Amendment right to confrontation if he does not have the opportunity to cross-examine the out-of-court declarant. <u>Crawford v. Washington</u>, 541 U.S. 36, 68 (2004).

Marshall argues that Mallindine's testimony concerning the controlled buy is inadmissible hearsay. We disagree. Mallindine merely recounted what he did in preparing the informant for the meeting with Marshall, what he observed the informant and Marshall do during their meeting, and what he received from the informant following the meeting. This testimony is not hearsay because it only

describes nonassertive conduct. Putting it another way, this is straight-forward eyewitness testimony. As the government concedes, Mallindine's testimony clearly supplied an inference that Marshall provided the informant with drugs during their meeting. But an inference drawn from observable facts is not the same as an out-of-court statement made by a nontestifying witness. Mallindine had first-hand knowledge about the facts to which he testified. Marshall's ability to cross-examine Mallindine provided the necessary opportunity for confrontation.

Marshall focuses on United States v. Silva, 380 F.3d 1018 (7th Cir. 2004), in support of his hearsay argument. In Silva, we reversed a defendant's drug conviction because the government relied on inadmissible hearsay at trial. There, a DEA agent was allowed to testify to conversations between a nontestifying confidential informant and other people, including the defendant, and to the informant's observations. We rejected the government's contention that this testimony was not offered for the truth of the matter asserted and warned of the "potential for abuse when police testify to the out-of-court statements of a confidential informant." Id. at 1020. Here, however, Mallindine only testified about what he did and what he observed. He did not recount the conversation between the informant and Marshall or the informant's observations. Thus, the concerns expressed in Silva are absent from our case.

Marshall also contends that Mallindine's testimony that the informant identified a photograph of Marshall and pointed out his residence was inadmissible hearsay. At the time Mallindine made these statements, he was discussing the initial process he undertook with the informant. When asked if he drove past the area where the informant said he could buy drugs, Mallindine responded:

> Well, the first thing I did is I had a photograph printed up
> of the target that we were looking to buy from. I took that
> photograph with me when I met with the informant, we
> did actually do a drive-by of the residence which he
> pointed out and I showed him the picture of the person we
> were discussing, and that's the person he identified.

The government concedes that this testimony may contain hearsay but argues that it did not affect Marshall's substantial rights under plain error review. We agree. There was no dispute that Marshall was the target of the investigation or that he lived at the residence identified by the informant. Indeed, Mallindine testified that he had seen Marshall before, that Marshall was the target of his investigation, and that Marshall was the man he saw meet with the informant just before the controlled buy. Marshall's driver's license and the utility bill found

during the search established that he lived at that residence.  Putting it briefly, Marshall's identity and his residence were simply nonissues at trial.[1]  Because Mallindine's testimony was either not hearsay or did not affect Marshall's substantial rights, Judge McCuskey did not plainly err in allowing it.

The final issue is whether Judge McCuskey erred in sentencing Marshall to 260 months, 100 months below the bottom of the advisory guidelines range. Pursuant to United States v. Booker, 543 U.S. 220 (2005), we review the sentence for reasonableness.  United States v. Acosta, 474 F.3d 999, 1001 (7th Cir. 2007).  We will affirm if, after ascertaining the appropriate advisory guidelines range, the district judge gave meaningful consideration to the sentencing factors specified in 18 U.S.C. § 3553(a) and arrived at an objectively reasonable sentence.  United States v. Wachowiak, 496 F.3d 744, 748 (7th Cir. 2007).

Marshall does not allege that Judge McCuskey failed to meet the requirements we just mentioned.  Rather, he claims that his sentence is per se unreasonable because (1) the guidelines punish offenses involving crack more severely than those involving powder cocaine and (2) his designation as a career offender, combined with the severe crack penalties, unreasonably skewed his guidelines range.  In support of his first argument, Marshall notes that, for over a decade, the Sentencing Commission has urged Congress to change the 100:1 crack-to-powder cocaine ratio because it produces sentencing anomalies.[2]  In support of his second (much more abbreviated) argument, he cites a letter written by public defenders to the Sentencing Commission and a public opinion survey that characterize the career offender guideline as unfair.  Essentially, Marshall asks us to categorically reject the two guidelines.

---

[1] Marshall also complains that Mallindine's statement during cross-examination that the informant and Marshall met "On the sidewalk is what I was told" was inadmissible hearsay. Notwithstanding the fact that Mallindine subsequently clarified that he himself observed the two men on the sidewalk, whether the buy occurred on the sidewalk or in the yard did not affect Marshall's substantial rights.

[2] The most recent Sentencing Commission report on this topic was released in May 2007 and can be accessed via its Web site.  Along with issuing the report, the Commission adopted a change in the guidelines, reducing the base offense level associated with each quantity of crack by two levels.  See 72 Fed. Reg. 28571-28572 (2007).  This change became effective on November 1, 2007.  The Commission just determined that the amendment will be retroactive. As we later discuss, however, the change will probably not help Mr. Marshall.

We have heard this argument before and declined to embrace it.  A district judge cannot be lenient at sentencing just because he disagrees with a legislative judgment, including a legislative judgment made by the Sentencing Commission as Congress' delegate.  United States v. Gonzalez, 462 F.3d 754, 755 (7th Cir. 2006).  As a result, we have consistently held that courts are not authorized to find that the guidelines themselves, or the statutes on which they are based, are unreasonable.  United States v. Wallace, 458 F.3d 606, 611 (7th Cir. 2006); see, e.g., United States v. Jointer, 457 F.3d 682, 687 (7th Cir. 2006); United States v. Miller, 450 F.3d at 275 (7th Cir. 2006).

We must reexamine our case law, however, in light of the Supreme Court's recent decision in Kimbrough v. United States, 552 U.S. ___ (2007).  In Kimbrough, the Court concluded that a sentence outside the guidelines range is not per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder offenses.  The Court stated that "[a] district judge must include the Guidelines range in the array of factors warranting consideration, but the judge may determine that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing."  Id. at ___ (slip op. at 2) (quoting 18 U.S.C. § 3553(a)).  Because Booker dictates that the guidelines are advisory, the Court held that the court of appeals "erred in holding the crack/powder disparity effectively mandatory."

Kimbrough does not indicate that any error occurred in our case.  The district judge in Kimbrough imposed a sentence outside the guidelines range based on a disagreement with the sentencing disparity for crack and powder offenses, which the Court said was permissible.  Here, Judge McCuskey imposed a sentence outside the guidelines range based on the factors specifically raised by Marshall--age and family concerns.  On appeal, Marshall essentially argues that Judge McCuskey erred by not, sua sponte, rejecting the 100:1 ratio and the career offender guidelines.  This is not what Kimbrough requires.  Its rule is phrased in the permissive "may," not the mandatory "must."  And, because Kimbrough reaffirmed that "a court [must] give respectful consideration to the Guidelines," id. at ___ (slip op. at 12), a categorical rejection would still be impermissible.  After carefully considering both the guidelines and Marshall's particular situation, Judge McCuskey sentenced him to 100 months below the bottom of the advisory guidelines range.  We find no basis to conclude that the sentence was unreasonably high.

Finally, we note that reducing the crack/powder disparity would not help Marshall because his guidelines range was driven by statute.  Because Marshall possessed more than five grams of crack and had prior drug convictions, his statutory offense maximum was life imprisonment.  See 21 U.S.C. § 841(b)(1)(B).

This set his guidelines offense level at 37, which, combined with his criminal history category, established a guidelines range of 360 months to life. See U.S.S.G. § 4B1.1. Thus, although the Sentencing Commission's recent guidelines change applies retroactively–and Marshall may be eligible to petition for resentencing--it would not affect his range, which was purely determined by statute. Furthermore, based solely on the amount of powder cocaine Marshall possessed, because of his prior drug convictions, his statutory offense maximum would be 30 years imprisonment. See 21 U.S.C. § 841(b)(1)(C). This would set his guidelines offense level at 34, which, combined with his criminal history category, would establish a guidelines range of 262 to 327 months. See U.S.S.G. § 4B1.1. Judge McCuskey's sentence of 260 months even falls below this range.

For these reasons, the judgment of the district court is AFFIRMED.