In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2128

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER J. BITTERMAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 01 CR 50032—**Philip G. Reinhard**, *Judge.*

ARGUED OCTOBER 29, 2002—DECIDED FEBRUARY 25, 2003

Before CUDAHY, COFFEY, and EASTERBROOK, *Circuit Judges.*

COFFEY, *Circuit Judge.* On December 19, 2001, Defendant-Appellant Christopher Bitterman ("Bitterman") was convicted before a jury of armed bank robbery and now appeals his conviction, arguing that the district court erred by: (1) excluding certain testimony as "collateral" that Bitterman claims had impeachment value; (2) allowing the prosecution to "place an undue influence" on Bitterman's heroin addiction; and (3) improperly instructing the jury. We affirm.

## I. FACTUAL BACKGROUND

On the morning of August 10, 2001, Bitterman and his friend, Michael Andersen ("Andersen"), decided to rob a bank in order that they might purchase heroin. They chose the First Midwest Bank in McHenry, Illinois, as they knew it had been successfully robbed before and they were familiar with its security procedures. Their plan was conceived in Bitterman's bedroom, with Bitterman standing guard at the door of the bank holding a gun while Andersen collected the money from the teller. After retrieving a pistol-type gun (BB) from beneath Bitterman's pillow and a backpack from his closet, the two proceeded to the bank in Andersen's car with Andersen at the wheel. While the two conspirators were waiting outside the bank in the car, Bitterman, apparently as a result of heroin withdrawal, began to vomit. Because of his sickness, Bitterman offered to drive the getaway vehicle rather than act as a lookout.

Shortly after 12:30 p.m., Andersen entered the bank wearing a ski mask and holding Bitterman's pistol in his left hand. Brandishing the weapon in front of the teller, Andersen screamed "Give me the F---ing money," and threw the backpack on the counter. In the process, the backpack slid off the counter, so Andersen stuffed the unmarked money (no dye packs were used) the teller had placed on top of the counter (approximately $1,800) into the right-hand pocket of his hooded sweatshirt and ran out the door, leaving the backpack behind. Shortly after exiting the bank, Andersen threw the weapon into the bushes nearby and entered the getaway car.

Several bystanders witnessed Andersen's flight from the bank, and one was able to provide the police with the license number and a description of the getaway car. Approximately one half hour later, with the aid of the descriptions of the vehicle and the perpetrators, police

officers apprehended Bitterman and Andersen in the vehicle as they were driving towards Chicago. Shortly after their arrests, Bitterman and Andersen were separated and questioned individually. The statements they gave to the police in effect served to directly contradict each other.

In a videotaped interview with the police, Bitterman claimed that the robbery was Andersen's idea and that he had rejected Andersen's invitation to participate in it. He further claimed that at Andersen's request, he had dropped off Andersen for a doctor's appointment and was simply driving by when he observed Andersen running out of the bank with a weapon and a fistful of money.

Andersen's initial story to the police was opposite that of Bitterman's. He blamed the crime on Bitterman alone and claimed to have been driving by at the exact moment when he saw his friend Bitterman jogging along the side of the road and picked him up. Just minutes after making his first statement to the police, however, Andersen changed his story and admitted his role in the crime. He recounted for the police their joint scheme, how they implemented their plan, and that he had been the robber and Bitterman the getaway driver.

Bitterman and Andersen were each charged with violating 18 U.S.C. § 2113(a) (bank robbery by force, violence, or intimidation). Andersen entered into a plea agreement and received a sentence reduction in exchange for his assistance at Bitterman's trial. Bitterman pled not guilty, and after a three-day jury trial, was convicted on December 19, 2001. On April 12, 2002, Bitterman was sentenced to 60 months imprisonment, and timely filed a notice of appeal. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II.  ANALYSIS

### A.  "Collateral" Testimony

Bitterman argues that the trial judge erred in rejecting as "collateral" certain testimony from one of his defense witnesses. We review the district court's decision to exclude certain evidence under the abuse of discretion standard. *See United States v. Dreel*, 155 F.3d 902, 905 (7th Cir. 1998). We "afford great deference to the trial court's determination of the admissibility of evidence because of the trial judge's first-hand exposure to the witnesses and the evidence as a whole, and because of the judge's familiarity with the case and ability to gauge the impact of the evidence in the context of the entire proceeding." *Id.*

While being cross-examined, Andersen admitted that during an interview with the FBI on October 30, 2001, he had told the authorities that Bitterman had at one time purchased a nine-millimeter handgun from Dominic Pantaleo ("Pantaleo"). The government objected to the question on the grounds of relevancy, arguing that there was no question that the gun used in the robbery was a BB gun, not a nine-millimeter handgun. The trial judge overruled the objection. Later, during the defendant's case-in-chief, Bitterman's defense counsel questioned defense witness Pantaleo about the nine-millimeter handgun in an attempt to demonstrate that Pantaleo had never sold Bitterman the gun. This time, the judge sustained the government's objection, ruling that the issue was "collateral" and thus not relevant, and instructed the jury to disregard any testimony regarding the nine-millimeter weapon.

Bitterman argues that the district court abused its discretion when excluding Pantaleo's testimony concerning the nine-millimeter pistol, and that contradictory testimony about the gun was a legitimate method for

"prov[ing] the Government's chief witness was lying . . . ." While contradiction is a valid method of impeachment, *see United States v. Kozinski*, 16 F.3d 795 (7th Cir. 1994), it is well-settled that "one may not impeach by contradiction regarding 'collateral or irrelevant matters,'" *id.* at 805, and that a party may not "contradict for the sake of contradiction . . . ." *Id.* at 806.

Here, the district judge properly found that evidence regarding the nine-millimeter gun was irrelevant. Furthermore, as Bitterman fails to explain how such evidence served any other purpose than contradiction, we refuse to disturb the discretion of the trial judge to exclude as "collateral" the testimonial evidence surrounding the nine-millimeter gun.

## B. Heroin Use

Bitterman also argues that the district court's decision to receive in evidence certain testimony regarding Bitterman's past use of heroin was improper, in that it allowed the government "to place an undue emphasis" on Bitterman's addiction. As Bitterman failed to object to this testimony at trial, we review the decision to admit such evidence for plain error. *See United States v. Knox*, 301 F.3d 616, 619 (7th Cir. 2002). It is well-established that the plain error standard allows appellate courts to correct only "particularly egregious errors for the purpose of preventing a miscarriage of justice." *United States v. Lieberman*, 128 F.3d 1085, 1095 (7th Cir. 1997) (citation omitted). The alleged error must have been of such gravity as to affect the "substantial rights" of a party, thus calling into question the "fairness, integrity, or public reputation of the judicial proceedings." *United States v. Montenegro*, 231 F.3d 389, 393 (7th Cir. 2000) (citation omitted); *see also United States v. Carrillo*, 269 F.3d 761, 768 (7th Cir. 2001), *cert. denied sub nom. Soto v. United*

*States*, 122 S. Ct. 1576 (Apr. 15, 2002) (noting that under the plain error doctrine, reversal is appropriate only where the trial court's error is "clear, prejudicial, and affects substantial rights") (citation omitted). However, even if there has been plain error, "we have the power to correct the error but are not required to do so." *United States v. Cusimano*, 148 F.3d 824, 828 (7th Cir. 1998) (citing *United States v. Olano*, 507 U.S. 725, 735 (1993)).

Admission of Andersen's testimony that he and Bitterman used heroin together since their freshman year of high school does not rise to the level of plain error. Despite the fact that the robbery occurred approximately five and a half years after the two had been in the ninth grade, the district court found that the evidence of Bitterman's drug addiction was relevant to establish Bitterman's motive to commit the robbery (in all probability so as to finance his serious drug habit of some five years). Such evidence is permissible under Rule 404(b) of the Federal Rules of Evidence. *See United States v. Brooks*, 125 F.3d 484, 499-500 (7th Cir. 1997). Moreover, as the judge gave the jury a limiting instruction (regarding the heroin testimony) to this effect, we are not convinced that the potential prejudice from such evidence outweighed its probative value. *See Brooks*, 125 F.3d at 500.[1]

---

[1]  In the middle of his argument about the evidence of his heroin addiction, Bitterman asserts—in a perfunctory and undeveloped manner—that the evidence of his guilt was insufficient for conviction. We will not entertain Bitterman's half-hearted and conclusory argument, as it lacks legal or factual support of any kind. *See United States v. Andreas*, 150 F.3d 766, 769 (7th Cir. 1998) ("We have held time and again that perfunctory and undeveloped arguments (even constitutional ones) are waived . . . .") (citation omitted).

## C.  Supplemental Instruction

Bitterman alleges that the district judge erred when he responded to a jury question presented during the jury's deliberations. Specifically, Bitterman claims that the mere fact that the judge gave the instructions placed "an undue influence on the aiding and abetting instruction to the exclusion of others." When reviewing a district court's response to a jury's request for additional or clarifying instructions, we apply the abuse of discretion standard. *See United States v. Watts*, 29 F.3d 287, 291 (7th Cir. 1994). In reviewing a supplemental instruction, we consider whether (1) the instructions given as a whole fairly and adequately treat the issues; (2) the supplemental instruction is a correct statement of the law; and (3) the district court answered the jury's question specifically. *United States v. Franco*, 874 F.2d 1136, 1143 (7th Cir. 1989).

The jury began its deliberations on December 19, 2001. Later that afternoon, the parties met with the judge to discuss a request by the jury for clarification. The note from the jury, which the trial judge read into the record in the presence of the defense counsel, read as follows: "We would like someone to clarify the charges against Bitterman and how it pertains to aiding and abetting and clarification of the law as applied to bank robbery. Also, please explain Page 21 [the aiding and abetting instruction] to us."

After a discussion with the parties, and over an objection by Bitterman's counsel, the judge responded with the following supplemental instruction:

> The defendant has been charged by indictment with bank robbery. A person indicted for bank robbery can be found guilty of bank robbery if that person knowingly aids, counsels, commands, or induces the commission of that offense. That person must knowingly

associate with the criminal activity, participate in the activity, and try to make it succeed. This is set forth in Page 21 of your instructions. I cannot clarify this any further as I understand your question.

We disagree with the defendant-appellant's argument that the district court, in response to a direct question from the jury dealing with the statement of the law concerning the language of the aiding and abetting section of the instruction, placed "an undue influence on the aiding and abetting instruction to the exclusion of others" thereby prejudicing him. The district judge, in our opinion, did nothing but present the jury with the relevant portions of the instructions that had already been given to the jury and with which the defendant had registered no objection. There is no question that the instructions given fairly and adequately treated the issues, and that the supplemental instruction correctly and succinctly stated the law applicable thereto. In answering the jury's question specifically, the district judge was doing precisely what the Supreme Court has prescribed: "When a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946). We refuse to hold that the district court abused its discretion in giving the supplemental instruction dealing with the problem the jury raised.

We hold that the district judge did not err when (1) excluding as "collateral" testimony concerning a gun that was not connected to the bank robbery; (2) allowing the prosecution to introduce evidence of Bitterman's heroin addiction as a motive for the robbery; or (3) providing an accurate supplemental instruction to the jury in direct response to the jury's specific question. We AFFIRM.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*