# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 5, 2013

No. 12-30340

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

JOSHUA JERMAINE KINCHEN,

Defendant – Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

A jury found Defendant Joshua Jermaine Kinchen ("Joshua") guilty of knowingly distributing at least 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). Joshua appeals, contending (1) the district court abused its discretion in admitting evidence of a prior possession of a distributable amount of cocaine and his statement during that prior arrest that the only way he knew how to earn a living to support his family was selling drugs; (2) the district court erred in refusing to allow a witness to invoke the Fifth Amendment in the presence of the jury; and (3) the district court abused its discretion by

No. 12-30340

sentencing Joshua to a term of imprisonment above the Guidelines' recommended range.  We AFFIRM.

**I**

Federal Bureau of Investigation ("FBI") Agent Bret Stiles worked with local police in connection with the investigation of a drug-trafficking organization.  The target of the investigation was Roger Brooks ("Roger"), the head of the organization.  Stiles paid Quamlisha Brooks ("Quamlisha") for services as a confidential informant.  At Stiles' direction, Quamlisha arranged to purchase two and one-quarter ounces of cocaine base from Roger.

Quamlisha contacted Roger to arrange the drug deal.  Quamlisha was on the telephone with Roger while driving to a nearby convenience store to purchase the cocaine.  She parked her car at a gas pump next to a maroon Ford Expedition with license plate number OIC578.[1]  Still on the phone with Roger, the driver of the Expedition got her attention and identified himself as "Lil' Maine," and Quamlisha asked Roger if he sent this individual to sell her the cocaine instead of coming himself.  Quamlisha handed the telephone to the Expedition's driver.  Roger verified the seller, and the drug sale occurred.

Leaving the store, Quamlisha called agent Stiles, who was nearby observing the transaction, and told Stiles the driver was not Roger, as they both had expected.  Stiles followed the Expedition to Old River Road, the street Joshua lived on with his brother, Nathaniel Kinchen ("Nathaniel"), and then called local police to see if they knew anyone who used the nickname "Little Maine."  A detective at the police station believed that Joshua was known as

---

[1] The jury received a stipulation of fact revealing that Joshua operated this vehicle in some instances during July and August 2009.

No. 12-30340

"Little Maine."   On the same day as the drug transaction, Stiles showed Quamlisha a photograph of Joshua and asked, "Who is this?"  She identified the person in the photograph as the Expedition's driver.  Quamlisha also selected the same photograph of Joshua out of a photographic lineup seven months later.  A single count indictment charged Joshua with distributing 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1).  Joshua pled not guilty and trial ensued.

Prior to trial, the Government moved to introduce evidence that Joshua had a prior conviction for possession of cocaine.  Ten months prior to the charged offense, in a separate incident, a detective, Corporal John Johnson, stopped and searched Joshua and found 21 grams of crack cocaine and $3522 cash in his pocket.  Joshua was convicted for that possession in July 2009, a month before the charged offense.  The Government also sought to admit a concurrent statement made by Joshua to Johnson.  According to Johnson, Joshua said he sold crack cocaine "because he did not know how to do anything else and that he had mouths to feed."

The district court held multiple pre-trial hearings considering the admissibility of Johnson's testimony.  The district court held that both the possession and the concurrent statement would be admissible, subject to the condition that the Government make no reference to Joshua's coincident arrest or conviction.  The Government agreed that it would not introduce evidence of Joshua's 2009 conviction, but specified that Johnson would testify that he found crack cocaine on Joshua and repeat the statement that Joshua made to him.  Over Joshua's objection, the district court ruled that the evidence of Joshua's prior possession and statement was intrinsic to the crime charged.  The court

No. 12-30340

alternatively ruled that the evidence was admissible under Rule 404(b) of the Federal Rules of Evidence as evidence of identity, motive, or intent.

At trial, Joshua contended that his brother Nathaniel, who looks similar to him, was the driver of the Expedition. In fact, Roger testified that he knew Nathaniel, not Joshua, as "Lil' Maine" and "Maine Maine." Roger testified that on the day of the transaction, he was leaving town and called Nathaniel with instructions to obtain cocaine for sale to Quamlisha. Roger spoke to both Nathaniel and Quamlisha near the time of the exchange, but Roger admitted that he was not paying attention to whom he was speaking with when Quamlisha handed the telephone to the Expedition's driver. Roger's phone records showed telephone calls to or from Nathaniel's and Quamlisha's numbers, but not to or from Joshua's number, on the day of the transaction. Roger testified that he had never used Joshua to help in a drug transaction, although he had provided cocaine to Joshua on at least nine prior occasions. He usually provided Joshua with about a gram of cocaine. Roger testified that he observed cars arriving and leaving the Kinchens' residence and he inferred they were drug deals, but he never witnessed drugs being exchanged. Roger stated that Joshua took part in whatever business the cars brought to the residence, but he did not believe Joshua was involved in the transaction at issue. On appeal, Joshua does not challenge the admission of any portion of Roger's testimony.

Detective Steven Lovett testified that he knew Joshua to be "Little Maine." Quamlisha testified, identifying Joshua as the Expedition driver and stating that she remembered being very attracted to Joshua, who was wearing a gold grill on his teeth. Roger and Joshua's girlfriend both testified that Joshua sometimes wore a gold grill on his teeth. Roger testified that Nathaniel had four

4

No. 12-30340

permanent gold teeth, two on the top and two on the bottom.  The jury found Joshua guilty; he was sentenced to be imprisoned for 180 months and to be placed on supervised release for five years.  Joshua appeals.

## II

We apply an abuse-of-discretion standard in reviewing a district court's evidentiary rulings. *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996). The abuse-of-discretion standard is "heightened" when evidence is admitted under Federal Rule of Evidence 404(b), because "[e]vidence in criminal trials must be strictly relevant to the particular offense charged." *United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003) (internal quotation marks omitted). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (quoting *United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005)).  "Nevertheless, erroneous admissions under Rule 404(b) are subject to a harmless error inquiry." *United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008) (internal citations omitted).

## III

Joshua argues that the district court reversibly erred in admitting evidence of his prior possession and the concurrent statement that he sold drugs to support his family, contending that, (1) the evidence was not intrinsic to the crime charged; (2) the district court abused its discretion in alternatively holding that the evidence was admissible under Rule 404(b); and (3) because the evidence tying him to the crime was minimal, any error was not harmless.

The district court held that Joshua's prior possession and statement that he sold drugs to support his family was admissible as intrinsic evidence, or if not

intrinsic, then "definitely 404(b)." The district court noted that while the evidence was prejudicial, it was relevant to either identity, motive, or intent because it showed that Joshua was a dealer, rather than merely a user, of cocaine. After Johnson testified, the district court provided a limiting instruction cautioning the jury that Joshua was not on trial for any act or conduct or offense not alleged in the indictment.

We agree with Joshua that the evidence in question was not intrinsic evidence. "Evidence of an act is intrinsic when it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode, or it was a necessary preliminary to the crime charged." *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007). Intrinsic evidence is "admissible to complete the story of the crime by proving the immediate context of events in time and place." *Coleman*, 78 F.3d at 156. Joshua was arrested for the prior possession and made the concomitant statement in October 2008, over a year before the drug transaction in the instant indictment. There is no evidence linking that earlier possession to the drug deal that Roger orchestrated for Quamlisha. Nor has the Government argued to the district court, or on appeal, that Johnson's testimony was intrinsic. Thus, we conclude that the district court was incorrect in stating that the testimony regarding the prior possession and concomitant statement was intrinsic. The evidence of Joshua's prior possession of cocaine and his concurrent statement were extrinsic to the offense charged here.

No. 12-30340

Accordingly, we turn to the central issue: whether the district court abused its discretion by admitting that evidence under Federal Rule of Evidence 404(b).[2] In *United States v. Beechum* we set out a two-part test for determining whether extrinsic evidence is admissible under Rule 404(b). 582 F.2d 898, 911 (5th Cir. 1978) (en banc). "First, it must be determined that the extrinsic evidence is relevant to an issue *other than the defendant's character*." *Id.* (emphasis added). "Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." *Id.*[3]

The standard for relevancy under *Beechum*'s first prong is identical to that found in Rule 401 of the Federal Rules of Evidence: whether the evidence has

---

[2] "Rule 404(b) is only implicated when the offered evidence is extrinsic; evidence intrinsic to the charged offense does not implicate [404(b)]." *United States v. Crawley*, 533 F.3d 349, 353–54 (5th Cir. 2008).

[3] Joshua contends that the district court failed to engage in a *Beechum* analysis. "When requested by a party, a trial court must articulate on the record its findings as to the *Beechum* probative value/prejudice evaluation." *United States v. Anderson*, 933 F.2d 1261, 1269 (5th Cir. 1991). Even without a request, a court should identify the admissible purpose of the rule and "explain why the evidence's probative value is not substantially outweighed by its undue prejudice" if admissibility of the extrinsic evidence is a close question. *Id.* at 1270 (internal quotation marks and citation omitted).

Though Joshua objected to the admissibility of the evidence under 404(b), he never requested that the district court record its *Beechum* findings. The district court's oral 404(b) ruling was not a model of clarity. Nonetheless, while the district court could have been more clear, we conclude that it did engage in a *Beechum* analysis. The district court held multiple pre-trial hearings to consider the admissibility of Johnson's testimony. The court explained that even if the evidence was not intrinsic, it was admissible as extrinsic evidence of Joshua's motive, discussed that the evidence was relevant circumstantial evidence in light of Roger's proposed testimony, and acknowledged the potential prejudicial effect but nevertheless admitted the evidence because of its relevancy and on the condition that the Government not refer to an actual conviction for the prior possession. Thus, Joshua's contention that the district court failed to engage in a *Beechum* analysis is without merit. *Cf. Anderson*, 933 F.2d at 1270 (remanding for *Beechum* analysis where nothing in record reflected that court applied *Beechum* test).

No. 12-30340

"any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401; *see Beechum*, 582 F.2d at 911. An extrinsic act is relevant to an issue other than the defendant's character if it is offered to prove one of the elements listed in Rule 404(b): "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b); *United States v. Sanders*, 343 F.3d 511, 518 (5th Cir. 2003).

Evidence of "motive" is thus relevant in that it helps establish that Joshua had a reason to commit the charged offense. *See e.g.*, *United States v. Benton*, 637 F.2d 1052, 1056–57 (5th Cir. 1981) (upholding admissibility of prior murders where relevant to show defendant's motive for charged murder). "Motive has been defined as 'the reason that nudges the will and prods the mind to indulge the criminal intent.'" *Id.* at 1056 (citing *Beechum*, 582 F.2d at 911 n.15); *see also* BLACK'S LAW DICTIONARY 1039 (8th ed. 2004) ("Motive" is "[s]omething . . . that leads one to act."). The extrinsic act evidence need not be similar to the charged offense when the extrinsic evidence is introduced to show motive. *Beechum*, 582 F.2d at 911 n.15.

Motive is not an ultimate issue in this case, such as an element of the criminal offense, but it is part of the story and provides context to the events in question. By showing motive—that this defendant had a reason to commit the crime—the Government's more important purpose was to offer circumstantial evidence to support Joshua's identity. *See Benton*, 637 F.2d at 1057. The prior possession is, of course, not admissible to show Joshua's propensity to deal drugs. Yet, extrinsic evidence of prior drug use or possession is relevant to establishing motive where the actions help establish why the defendant wanted

8

to commit the charged offense.[4] *See, e.g.*, *United States v. Bitterman*, 320 F.3d 723, 727 (7th Cir. 2003) (holding evidence of defendant's prior drug use and heroin addiction admissible to establish defendant's motive to commit robbery); *United States v. Weems*, 322 F.3d 18, 25 (1st Cir. 2003) (holding evidence of drug dealing at house where defendant was arrested admissible in felon-in-possession-of-firearm prosecution to establish defendant had motive to carry weapon). Joshua's concurrent statement that he dealt drugs because he did not know how else to support his family is clearly relevant to establishing what led Joshua to commit the charged offense. This evidence, in turn, countered the defense strategy of portraying Joshua as primarily a user, not a dealer, of cocaine. We conclude that the district court did not abuse its discretion by holding that Joshua's prior possession and his concurrent statement were relevant to his motive.

Turning to step two of our *Beechum* analysis, we must assess whether the district court abused its discretion in holding that the prejudicial effect of Joshua's prior possession and concurrent statement did not substantially outweigh the probative value. *See Beechum*, 582 F.2d at 913; *see also* FED. R. EVID. 403.[5] We consider several factors in determining whether the prejudicial

---

[4] The dissenting opinion points out that an extrinsic act may support the inference of a mental state when the act is a consequence of the mental state. Joshua's prior possession—in an amount seemingly greater than that for personal use—and the quantity of cash inferentially rebut Joshua's defensive assertions that he was only a user and thus support his motive for the sale of drugs.

[5] Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

effect of the extrinsic evidence substantially outweighs its probative value: (1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions. *United States v. Sanchez*, 988 F.2d 1384, 1394 & n.14 (5th Cir. 1993) (citing *Beechum*, 582 F.2d at 915). The probative value of extrinsic evidence may be measured by whether and to what extent the accused's motive, intent, or other characteristic "is established by other evidence, stipulation, or inference." *Beechum*, 582 F.2d at 914. The inquiry "calls for a commonsense assessment of all the circumstances surrounding the extrinsic offense." *Id.* The more closely an extrinsic offense resembles the charged offense, the greater the prejudice to the defendant, *id.* at 915 n.20, but it does not follow that similarity *requires* exclusion of the evidence. *United States v. Cockrell,* 587 F.3d 674, 679 (5th Cir. 2009). Importantly, we make this analysis concerning Rule 403 through a lens that gives great deference to the district court's informed judgment in weighing the factors. *See United States v. Moye*, 951 F.2d 59, 62 (5th Cir. 1992).

The prejudicial effect of extrinsic evidence substantially outweighs its probative value when the relevant exception, i.e. motive, is uncontested, because the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudice. *United States v. Roberts*, 619 F.2d 379, 382 (5th Cir. 1980) (citing *Beechum*, 582 F.2d at 914). However, we disagree with Joshua's apparent argument that only his identity and not his motive were at issue, such that the motive evidence was of minimal probative value. The two issues were

---

FED. R. EVID. 403. *Beechum* essentially incorporates Rule 403's balancing test as its second prong. *See Crawley*, 533 F.3d at 355.

No. 12-30340

intertwined here given Joshua's theory of mistaken identity, premised in part on his argument that he was principally a user.[6] Evidence of Joshua's motive to be involved in a drug transaction, then, was probative of establishing his presence at the scene of the crime and his role in this transaction. We conclude that the district court did not err in finding this evidence probative.[7]

Addressing the potential prejudicial effect, we note that the jury heard from Roger (without objection) that Joshua used cocaine and participated in drug deals. Thus, the "feed his family" evidence was not the only evidence suggesting Joshua was a drug dealer. Furthermore, it was not the sort of admission of acts of a "heinous nature" that would inflame the jury to act irrationally. *See Beechum*, 582 F.2d at 917. Any prejudicial effect of the testimony was further diminished by the district court's instructions to the jury regarding the "limited purpose[] for which any evidence of other similar acts may be considered." *See Crawley*, 533 F.3d at 355. We have also held that "proof of prior drug activities is more probative than prejudicial" in proving Rule 404(b) exceptions such as knowledge or intent. *United States v. Harris*, 932 F.2d 1529, 1534 (5th Cir. 1991) (citing cases); *see also United States v. Thomas*, 348 F.3d 78, 86 (5th Cir.

---

[6] The fallacy of this "only identity is at issue" theory is shown by the following hypothetical. Suppose X is charged with murdering Y. Can X avoid the introduction of evidence to show he had a motive to murder Y by conceding that *somebody* with a motive murdered Y, just not him?

[7] Further, we may affirm the district court's denial a motion to suppress evidence based on any basis in the record. *See United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010); *United States v. Charles*, 469 F.3d 402, 405 (5th Cir. 2006). The district court held the evidence as admissible to prove motive, intent, or identity. The dissenting opinion appears to concede that the evidence would have been admissible as proof of intent, but for intent not being contested at trial. Because we again disagree that Joshua could "concede" the intent of the driver, and thus prevent the Government from introducing evidence proving this point, we note the evidence may have been properly admitted under 404(b) on the basis of intent as well.

11

No. 12-30340

2003) ("[T]he district court properly explained that the evidence of the defendant's prior convictions for cocaine-related offenses is probative of the [d]efendant having the requisite state of mind or intent to participate in the present cocaine-related offenses." (internal quotation marks and citation omitted)).    We conclude that it was not an abuse of discretion for the district court to conclude that the prejudicial effect of the evidence did not *substantially* outweigh its probative value.    We thus do not address the question of harmlessness of any error.

**IV**

Joshua also challenges the procedure followed by the district court with respect to Nathaniel's testimony.    At a pre-trial hearing, the district court appointed an attorney for Nathaniel and ordered the parties to file questions they wanted to ask of Nathaniel. Of the questions submitted, the court selected five that would be allowed.    The court conducted a subsequent hearing  to determine whether Nathaniel wanted to invoke his Fifth Amendment right against self-incrimination.    Nathaniel was sworn in as a witness, the court explained that answers to some submitted questions may incriminate him, and Nathaniel's counsel said Nathaniel would invoke his right.

Joshua requested to ask Nathaniel each of the questions in front of the jury and have him invoke his right to each individual question.    Over Joshua's objections, at trial he was permitted to ask Nathaniel only the questions pre-approved by the court.    On appeal, Joshua argues that this overall procedure denied him his Sixth Amendment right to present witnesses on his behalf and his Fifth Amendment right to due process of law. He specifically complains that he was not able to explain to the jury why Nathaniel's testimony was so limited.

12

No. 12-30340

"A valid assertion of the witness' Fifth Amendment rights justifies a refusal to testify despite the defendant's Sixth Amendment rights." *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980) (citing *United States v. Lacouture*, 495 F.2d 1237 (5th Cir. 1974); *United States v. Gloria*, 494 F.2d 477 (5th Cir. 1974)). A district court's decision to exclude a witness' testimony based on an invocation of the witness' Fifth Amendment privilege is reviewed for an abuse of discretion. *United States v. Boyett*, 923 F.2d 378, 379–80 (5th Cir.1991). It was within the district court's discretion to prevent Joshua from making Nathaniel invoke his Fifth Amendment privilege in the presence of the jury. *See Lacouture*, 495 F.2d at 1240. Joshua has no "right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege," which may have been the purpose of Joshua's questions to Nathaniel, according to Joshua's appellate brief. *See id.*

In *United States v. Mares*, we found no error in the trial court's refusal to allow counsel to take a witness question-by-question outside of the presence of the jury for the purpose of having the witness invoke his right after each question. 402 F.3d 511, 514–15 (5th Cir. 2005). A key focus is whether the trial court inquires into the legitimacy of the invocation, *see id.*, which is an issue Joshua does not brief on appeal. We conclude that Joshua does not present any error warranting reversal in this regard.

## V

Finally, Joshua challenges the procedural and substantive reasonableness of his above-Guidelines sentence.[8] On appeal, Joshua first argues that his sentence was unreasonable because the court did not use the Fair Sentencing

---

[8] The Guidelines range was 120 to 150 months.

No. 12-30340

Act's ("FSA") five-year mandatory minimum sentence. After his sentencing hearing, the Supreme Court subsequently determined that the FSA applies to an offender like Joshua whose crime preceded August 3, 2010, but was sentenced after that date. *See Dorsey v. United States*, 132 S. Ct. 2321, 2331 (2012). Thus, Joshua is correct that the FSA applies to his sentence.

However, we do not remand such a procedural error if the Government proves the error is harmless by "point[ing] to evidence in the record that will convince us that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error made[.]" *United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009) (citation omitted). Here, the Government shows that the presentence report used the FSA-amended, 2011 version of the Guidelines to produce a recommended range of 120 to 150 months. The court gave an *upward* variance because it concluded that 150 months was insufficient.

A panel of this court recently considered this same argument and found any error in not recognizing the FSA's retroactive applicability was harmless, relying on authority that found harmless error when an imprisonment term was not lengthened as the result of such error. *United States v. Williams*, 505 F. App'x 343, 344 (5th Cir. Jan. 3, 2013) (unpublished) (citing *United States v. Teel*, 691 F.3d 578, 587 (5th Cir. 2012)), *cert. denied*, 133 S.Ct. 2375 (2013). Similarly, here, we conclude that this error was harmless; the mandatory minimum was not the basis for the district court's decision to vary upward.

Joshua next argues his sentence was procedurally unreasonable because the court failed to adequately explain its reason for deviating from the Guidelines' recommended range. Joshua contends that we cannot determine

14

No. 12-30340

how substantial a deviation the court intended to make because it did not start with the five-year mandatory minimum sentence. He cites *Gall v. United States*, for the proposition that "a major departure should be supported by a more significant justification than a minor one." 552 U.S. 38, 50 (2007).

Yet, the court's upward variance was from the range calculated under the Guidelines (120 to 150 months)—a range Joshua does not challenge—not from a statutory minimum. After looking at the factors in 18 U.S.C. § 3553(a) and adopting the presentence report's findings, the district court repeatedly expressed its concern with the level of violence exhibited in past crimes and Joshua's lack of respect for the law, and concluded that Joshua needed more than a 150-month sentence to afford adequate deterrence in light of the danger he presented to the public. Similarly, in its statement of reasons, the district court explained that Joshua needed a "stern sentence" for, among other things, deterrence purposes. This articulation is adequate under our precedent. *See United States v. Rhine*, 637 F.3d 525, 528 (5th Cir. 2011) (affirming a 180-month sentence where the recommended Guidelines range was 30 to 37 months, and the court's articulated reasons paralleled the § 3553(a) factors).

Last, Joshua contends his sentence was substantively unreasonable because the court "pointed to no specific feature of [his criminal] history that was not properly reflected in his criminal history calculation." He also claims Nathaniel received a lesser sentence for similar conduct.

These arguments are not briefed. In any event, we conclude that the district court adequately explained its reason for varying upward. Any dissimilarity with Nathaniel may be understood in light of the fact that Nathaniel accepted responsibility for his crime, while Joshua did not, so they

15

are not similarly situated. *See United States v. Guillermo-Balleza*, 613 F.3d 432, 435 (5th Cir. 2010) (the § 3553(a)(6) "disparity" factor requires district courts to avoid only unwarranted disparities between similarly situated defendants nationwide and does not require the district court to avoid sentencing disparities between co-defendants who might not be similarly situated); *United States v. Candia*, 454 F.3d 468, 476 (5th Cir. 2006).

AFFIRMED.

No. 12-30340

EMILIO M. GARZA, Circuit Judge, dissenting:

I dissent from the majority opinion's holding that the district court did not abuse its discretion by admitting Joshua's prior possession and concurrent statement under Rule 404(b). Because I conclude the district court did abuse its discretion by admitting the extrinsic evidence and the error was not harmless, I would VACATE the conviction and REMAND for a new trial.

First, while I agree that Joshua's concurrent statement is relevant to Joshua's motive, Joshua's prior possession is not and thus fails even the first step of the *Beechum* analysis. For extrinsic evidence to be admissible under the first step of the *Beechum* analysis, the evidence must be "relevant to an issue other than the defendant's character." *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978). While the district court held the prior possession was relevant to establishing Joshua's motive, intent, or identity, on appeal the Government only contends the evidence is relevant to establishing Joshua's motive.[1] Evidence is relevant to motive if it helps establish why the defendant

---

[1] Accordingly, the Government waived the issues of identity and intent. FED. R. APP. P. 28(a)(9)(A). As such, one need consider only whether the evidence would be admissible to prove Joshua's motive, but in any event, the evidence is not admissible to establish identity or intent. While there are forms of identity evidence other than modus operandi, neither the Government nor the district court suggested those forms of identity evidence were applicable here. *See United States v. Carrillo*, 981 F.2d 772, 775 (5th Cir. 1993) (considering admissibility of extrinsic evidence under only modus operandi exception because Government sought to admit it only for that purpose). To be admissible, "other acts" evidence offered to prove modus operandi must be so similar to the charged offense "that they evince a signature quality—marking the extraneous act as the handiwork of the accused." *United States v. Sanchez*, 988 F.2d. 1384, 1393–94 (5th Cir. 1993) (internal quotation marks omitted). As Joshua's prior possession is not so similar to the charged offense as to constitute modus operandi evidence, the evidence is inadmissible to establish identity. The intent exception is also unavailing. While we have allowed extrinsic evidence of intent in drug possession or conspiracy cases where criminal intent was disputed, *see e.g.*, *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996) (holding no unfair prejudice from admission of conviction for possession of 50 to 200 pounds of marijuana with intent to distribute as evidence of intent to

committed the offense. *United States v. Benton*, 637 F.2d 1052, 1056 (5th Cir. Unit B Feb. 1981). The majority holds Joshua's prior possession helps establish why he committed the charged offense without explaining *how*. The cases the majority cites in support of the relevancy of Joshua's prior possession, *United States v. Bitterman*, 320 F.3d 723 (7th Cir. 2003) and *United States v. Weems*, 322 F.3d 18 (1st Cir. 2003), are readily distinguishable. In both cases extrinsic evidence of the prior possession or drug use was relevant to establishing why the defendant committed the offense in question. In *Bitterman* evidence of the defendant's prior drug use helped establish why the defendant committed the robbery: to support his drug habit. 320 F.3d 723, 727 (7th Cir. 2003). In *Weems*, evidence of drug dealing at the house where the defendant was arrested helped establish why the defendant carried a weapon to the residence: for protection in a location where there was unlawful activity occurring. 322 F.3d 18, 25 (1st Cir. 2003). The majority does not cite and nor have we located any authority holding that in an ordinary drug deal prosecution a defendant's prior possession is relevant to establishing his *motive* to commit the instant drug offense.[2] That Joshua's prior possession helps establish that he was a drug dealer is unhelpful:

distribute cocaine), here because intent is not contested the probative value of intent evidence is minuscule. The Government firmly established and Joshua did not dispute that the driver of the Expedition intended to distribute drugs. The only question for the jury was whether Joshua or Nathaniel was the driver of the Expedition.

[2] In a prosecution for drug conspiracy we held that evidence that (1) an officer found $350,000 in the defendant's car and (2) an officer found $26,000 and a pound and a quarter of cocaine in the defendant's vehicle was probative of "motive and intent to carry drugs and money interstate." *United States v. Vaquero*, 997 F.2d 78, 83 (5th Cir. 1993). *Vaquero*, however, applied plain error review, and involved an interstate drug conspiracy involving hundreds of thousands of dollars. *Id.* In possession with intent to distribute prosecutions we have found evidence of prior drug possessions relevant to establishing intent, but not motive, to commit the charged drug offense. *E.g.*, *United States v. Arnold*, 467 F.3d 880, 885–86 (5th Cir. 2006).

the fact Joshua dealt drugs in the past is relevant only to Joshua's *propensity* to deal drugs but not to his *motive* to deal drugs.[3] *See United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000) (holding for evidence to be admissible under Rule 404(b) its relevance "must not include bad character or propensity as a necessary link in the inferential chain") (internal quotation marks omitted).

The reason the majority does not explain why Joshua's prior possession helped establish his motive to commit the charged drug offense is that it does not. The relevance of extrinsic evidence of motive turns on two different inferences. First, the extrinsic act must support an inference of a mental state, such as desire for money, jealousy, revenge, etc. 22ACharles Alan Wright & Victor James Gold, Fed. Prac. & Proc. Evid. § 5240 (2d ed. 2013); *e.g., United States v. Arnold*, 773 F.2d 823, 833 (7th Cir. 1985) (holding evidence of defendants' loan sharking activities admissible to show motive for bribery of witness before grand jury investigating loansharking). The extrinsic act can prove mental state in two ways: (1) the extrinsic act can cause the mental state, *see e.g., United States v. Stumes*, 549 F.2d 831, 833 (8th Cir. 1977) (holding evidence of prior conviction of manslaughter admissible to show vengeful motive for sending threatening letters to witnesses), or (2) the extrinsic act may be a consequence of the mental state, *see, e.g., United States v. Garcia–Meza*, 430

---

[3] The fallacy of holding the prior possession is relevant to Joshua's motive because it establishes that he is a drug dealer is readily apparent. If that were so, in every prosecution for X crime the fact the defendant previously committed X crime would be relevant to the defendant's motive to commit X crime. While we have consistently held such logic applicable in the context of establishing a defendant's *intent* to commit X crime, *e.g, United States v. Booker*, 334 F.3d 406, 412 (5th Cir. 2003), we have, for good reason, never applied this logic to *motive. See United States v. Varoudakis*, 233 F.3d 113, 120 (1st Cir. 2000).

F.3d 364, 368 (6th Cir. 2005) (holding prior assault on wife admissible to show husband's jealousy as motive for her murder).

Second, the mental state shown must be, either directly or through appropriate inferences, causally related to some other issue in the case. Wright, supra, § 5240. Where there is no evidence linking the charged crime to the uncharged crime the latter proves the former only by inference to the defendant's character and is thus irrelevant to motive. *United States v. Brown*, 880 F.2d 1012, 1014–15 (9th Cir. 1989) (holding where court could not see how defendant's prior assaults established motive to commit charged murder admission of prior assaults was abuse of discretion). Here, the prior drug possession does not support an inference of any mental state (e.g. a desire for money, jealousy, or revenge) that is casually related to an issue in the case. The majority holds the prior possession is relevant to establishing that Joshua was a dealer rather than merely a user of drugs, but this is propensity evidence, not evidence of a mental state that explains Joshua's involvement in the charged offense.[4] Accordingly, Joshua's prior possession is not relevant to establishing his motive to commit the charged offense and fails even the first step of the *Beechum* analysis.

Second, both Joshua's prior possession and his concurrent statement fail step two of the *Beechum* analysis. For extrinsic evidence to be admissible under the second step of the *Beechum* analysis, its prejudicial effect must not

---

[4] The majority urges that the prior possession was admissible to counter the defense's strategy of portraying Joshua as primarily a user, not a dealer, of cocaine, *ante*, at 9, but this does not explain how the prior possession was relevant to Joshua's motive. If the defense opened the door to character evidence, then perhaps the evidence might have been admissible as propensity evidence under Federal Rule of Evidence 404(a)(2)(a), but that is not the question before us.

substantially outweigh its probative value. *See Beechum*, 582 F.2d at 913. The prejudicial effect of extrinsic evidence substantially outweighs its probative value when the relevant exception is uncontested because the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudicial effect. *United States v. Roberts*, 619 F.2d 379, 382 (5th Cir. 1980) (citing *Beechum*, 582 F.2d at 914). Accordingly, courts have generally held motive evidence is admissible only where the defendant contests the issue of motive or where motive is an element of the offense. *See, e.g.*, *United States v. Williams*, 585 F.3d 703, 708 (2d Cir. 2009) (holding extrinsic evidence of defendant's motive to possess gun inadmissible where defendant did not contest the issue of motive); *United States v. Siegel*, 536 F.3d 306, 317–18 (4th Cir. 2008) (holding 404(b) motive evidence admissible where murder statute required Government to prove not only that defendant killed victim but that she killed victim for purpose of preventing him or anyone else from providing law enforcement with information about federal crimes she committed); *United States v. Johnson,* 27 F.3d 1186, 1191–93 (6th Cir. 1994) (holding trial court improperly instructed jury, in trial for possession of cocaine base with intent to distribute, that evidence of defendant's similar acts of possession was admissible to show motive, where motive was not element of crime charged and defendant did not contest motive); *United States v. Tai*, 994 F.2d 1204, 1210 (7th Cir. 1993) (holding 404(b) evidence admissible under intent exception but not motive exception where motive not contested).

Here, the Government had little need for extrinsic evidence of motive and any probative value the evidence may have had was necessarily slight. The majority holds that Joshua's motive was contested because the issues of motive and identity "were intertwined here given Joshua's theory of mistaken identity,

premised in part on his argument that he was principally a user." *Ante*, at 10–11. The majority might be correct if the defense had disputed any material aspect of the Government's case or that either Nathaniel or Joshua was the Expedition driver. The defense did not, however, challenge any feature of the drug transaction except for the identity of the man who handed the drugs to the informant.[5] The defense did not contest that Joshua (as well as Nathaniel) had motive.[6] No aspect of Joshua's defense suggested that he did not have motive to commit the offense. *Cf. United States v. Benton*, 852 F.2d 1456, 1456 (6th Cir. 1988) (holding defendant made motive issue in drug conspiracy prosecution by advancing theory he was conducting investigation of drug dealing). Therefore the probative value of motive evidence was necessarily slight. Moreover, the prejudicial effect of admitting Joshua's prior possession and statement that he sold crack cocaine "because he did not know how to do anything else and that he had mouths to feed" was great. The statement established not only that Joshua dealt drugs, a fact also established by Roger's testimony, but that dealing drugs

---

[5] Nothing in this dissent suggests that a defendant's ability to "concede" one of the 404(b) non-character purposes will necessarily "prevent the government from introducing evidence proving this point." *Cf. ante*, at 11 n.7. In evaluating whether 404(b) evidence may be admitted courts must exercise their discretion under Rule 403. *See also Beechum*, 582 F. 2d at 911. Of course, a defendant's choice to "concede" may impact the balance of interests. In this particular case, Joshua did not contest intent or motive. Thus, evidence offered to establish intent or motive had little probative value.

[6] Accordingly, the majority's murder hypothetical is not on point. *Ante*, at 11 n.6. Here, unlike in the majority's hypothetical, Joshua is conceding not that *somebody* committed the crime but that either he or his brother committed the drug deal. Furthermore, Joshua did not contest that he, like his brother, had a motive to commit the drug deal. Unlike in murder prosecutions, in possession with intent to distribute prosecutions, motive is generally uncontested because it is obvious: to make money. *Harmelin v. Michigan*, 501 U.S. 957, 1025 (1991) (White, J., dissenting) ([T]here is usually a pecuniary motive when someone possesses a drug with intent to deliver it . . . .").

was the *only* way Joshua knew how to make money, greatly increasing the risk that the jury would convict him for his bad character.[7] Furthermore, Joshua's prior possession of a distributable amount of cocaine is highly similar to the charged offense, compounding its prejudicial effect. *See Sanchez*, 988 F.2d at 1394. Although the district court issued a limiting instruction after Johnson testified, we have held that where the government's evidence of the defendant's guilt is weak, a limiting instruction may not suffice to cure the potential prejudice. *See United States v. McCarter*, 316 F.3d 536, 538–39 (5th Cir. 2002). As such, the district court abused its discretion by admitting Joshua's prior possession and concurrent statement.[8]

---

[7] The majority holds the prejudicial effect of Johnson's testimony was minimal in light of Roger's testimony. *Ante*, at 11. Johnson's testimony was, however, significantly more damaging to Joshua's character than Roger's testimony. While Roger's testimony implicated both Joshua and Nathaniel as drug dealers, Johnson's testimony was damaging only to Joshua. Moreover, although Roger testified that Joshua used cocaine and participated in drug deals, Roger testified that Joshua usually purchased about a gram, a much smaller amount than the 21 grams Johnson testified he found in Joshua's pocket. While Roger merely testified that Joshua took part in drug deals that occurred in his home, Johnson's testimony established that Joshua's primary source of income was selling crack cocaine. Therefore, even accounting for Roger's testimony that Joshua purchased and used cocaine and was involved in drug deals, the minuscule probative value of Johnson's testimony was substantially outweighed by its prejudicial effect.

[8] The district court also held that Joshua's prior possession was relevant to establishing his intent or identity. The majority correctly notes that we may affirm the district court on any basis in the record. *Ante*, at 11 n.7. It further suggests that Rule 404(b)'s "intent" prong provides such a basis. *Id.* This is not necessarily so. The prior possession evidence, if treated as proof of Joshua's intent to distribute in the current case, may indeed satisfy the first step of the *Beechum* analysis—relevance to an issue other than the defendant's character. *See, e.g.*, *Broussard*, 80 F.3d at 1040 (finding prior possession with intent to distribute conviction relevant to the question of intent in a subsequent possession with intent to distribute charge). Under the second step, however, the intent argument fails on the same grounds as motive. Because intent was not a contested issue at trial, the probative value of evidence addressing this point is low and is substantially outweighed by the dangers of unfair prejudice discussed above.

No. 12-30340

Because I conclude the admission of the extrinsic evidence was an abuse of discretion, I proceed to consider whether the error was harmless. "The government has the burden of establishing harmlessness beyond a reasonable doubt." *United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008). If the Government fails to meet its burden, we must reverse the error. An error is harmless if a court, "after a thorough examination of the record is able to conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." *United States v. Barraza*, 655 F.3d 375, 382 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1590 (2012). I cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the admission of the extrinsic act evidence. Aside from Johnson's testimony, the evidence against the brothers was in equipoise: Quamlisha identified Joshua as the Expedition driver and Roger testified that Nathaniel conducted the transaction. The undisputed trial testimony established that Joshua and Nathaniel look remarkably alike. While Joshua wore a temporary gold grill, Nathaniel had permanent gold teeth. Roger testified that while both brothers were involved in dealing drugs, he sent Nathaniel to conduct the deal in question. Roger's phone records showed telephone calls to or from Nathaniel's and Quamlisha's numbers, but not to or from Joshua's number, on the day of the transaction. Roger testified that Joshua purchased only small quantities of cocaine, usually about a gram. Roger testified that he knew Nathaniel, not Joshua, as "Lil' Maine" and "Maine Maine." Obviously the credibility of the sole witness to identify Joshua as the driver of the Expedition is crucial, and there are multiple reasons to question the credibility of that identification. Quamlisha was not acquainted with Joshua prior to the instant drug transaction, and her only opportunity to view the driver of the Expedition was during a three-minute

24

drug transaction during which the driver never exited the vehicle. When Quamlisha initially identified the driver of the Expedition as Joshua, she did not select him out of a photographic lineup, but merely confirmed that the only photograph Stiles showed her was a photograph of the driver. *See Bloodworth v. Hopper*, 539 F.2d 1382, 1383 (5th Cir. 1976) ("The display of pictures solely of the suspect is one of the most suggestive and hence most objectionable methods of identification."). Quamlisha admitted she used marijuana on a daily basis at the time of the transaction. As such, we cannot say that the Government's evidence of Joshua's guilt is so strong that we can conclude beyond a reasonable doubt that absent the error the jury would still have convicted Joshua. Accordingly, the Government failed to meet its burden of proving beyond a reasonable doubt that the error was harmless.

For these reasons, I would VACATE the conviction and REMAND for a new trial. Respectfully, I dissent.